No. 24-5588

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

STATE OF TENNESSEE; COMMONWEALTH OF KENTUCKY; STATE OF OHIO; STATE OF INDIANA; COMMONWEALTH OF VIRGINIA; STATE OF WEST VIRGINIA,

*Plaintiffs-Appellees,*

and

CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL; A.C., by her next friend and mother, Abigail Cross,

*Intervenors-Plaintiffs-Appellees,*

v.

MIGUEL CARDONA, in his official capacity as Secretary of Education; and UNITED STATES DEPARTMENT OF EDUCATION,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Kentucky
Case No. 2:24-cv-00072-DCR-CJS

## INTERVENORS-APPELLEES' RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR STAY

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

James A. Campbell
Jonathan A. Scruggs
Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org
jwarner@ADFlegal.org
*Counsel for Intervenors-Appellees*

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-5588      Case Name: Tennessee et al. v. Cardona, et al.

Name of counsel: John J. Bursch

Pursuant to 6th Cir. R. 26.1, Christian Educators Association International; A.C.

*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

## CERTIFICATE OF SERVICE

I certify that on _____ July 3, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ John J. Bursch

_____

_____

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Corporate Disclosure Statement ...............................................i

Table of Authorities.............................................................. iii

Introduction ....................................................................... 1

Background ........................................................................ 3

Argument ........................................................................... 8

I.  The Department is unlikely to succeed in proving that the
    district court's preliminary injunction is improper. ....................... 8

    A.  Severance is not required at this preliminary stage. ............. 9

    B.  The Department has not shown the Rule is severable. ....... 10

        1.  The Department has not shown that the Rule can
            stand without the challenged provisions. ................... 10

        2.  The Department has not shown that the stay and
            injunction below is overbroad as to certain
            applications of the challenged provisions. .................. 13

    C.  The Department forfeited its severance argument. ............. 17

II. The remaining factors favor preserving the status quo. .............. 18

    A.  Piecemeal compliance costs are extraordinary .................... 18

    B.  Piecemeal compliance would create confusion. ................... 19

Conclusion ........................................................................ 20

Certificate of Compliance ..................................................... 22

Certificate of Service .......................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Adams ex rel. Kasper v. School Board of St. Johns County*,
    57 F.4th 791 (11th Cir. 2022)........................................................15

*Alaska Airlines, Inc. v. Brock*,
    480 U.S. 678 (1987) .................................................................9, 10

*American Meat Institute v. Pridgeon*,
    724 F.2d 45 (6th Cir. 1984) ..........................................................17

*Balow v. Michigan State University*,
    24 F.4th 1051 (6th Cir. 2022)........................................................9

*Bostock v. Clayton County*,
    590 U.S. 644 (2020) .................................................................4, 15

*Brenay v. Schartow*,
    709 F. App'x 331 (6th Cir. 2017) ..................................................17

*Burniac v. Wells Fargo Bank, N.A.*,
    810 F.3d 429 (6th Cir. 2016) .........................................................9

*Cohen v. Brown University*,
    101 F.3d 155 (1st Cir. 1996).........................................................15

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*,
    526 U.S. 629 (1999) ......................................................................5

*DHS v. Regents of the University of California*,
    591 U.S. 1 (2020) ........................................................................16

*Doster v. Kendall*,
    114 S. Ct. 481 (2023) ....................................................................8

*Doster v. Kendall*,
    54 F.4th 398 (6th Cir. 2022)........................................................8, 9

*Jackson v. Birmingham Board of Education*,
    544 U.S. 167 (2005) ....................................................................15

*McPherson v. Kelsey,*
  125 F.3d 989 (6th Cir. 1997) .................................................. 17, 18

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,*
  945 F.2d 150 (6th Cir. 1991) ............................................................. 8

*Minnesota v. Mille Lacs Band of Chippewa Indians,*
  526 U.S. 172 (1999) ....................................................................... 13

*Nebraska v. Biden,*
  52 F.4th 1044 (8th Cir. 2022) ......................................................... 18

*Nken v. Holder,*
  556 U.S. 418 (2009) .......................................................................... 8

*Ohio State Conf. of NAACP v. Husted,*
  769 F.3d 385 (6th Cir. 2014) ....................................................... 8, 20

*Ohio v. EPA,*
  603 U.S. ---, 2024 WL 3187768 (U.S. June 27, 2024) .................... 12

*Roe v. Department of Defense,*
  947 F.3d 207 (4th Cir. 2020) ............................................................ 9

*Sackett v. EPA,*
  598 U.S. 651 (2023) ........................................................................ 17

*Trump v. International Refugee Assistance Project,*
  137 S. Ct. 2080 (2017) ...................................................................... 9

*United States v. Booker,*
  543 U.S. 220 (2005) ........................................................................ 13

*United States v. Jackson,*
  390 U.S. 570 (1968) ........................................................................ 12

*United States v. Virginia,*
  518 U.S. 515 (1996) ........................................................................ 15

*Wages & White Lion Investments, LLC v. FDA,*
  16 F.4th 1130 (5th Cir. 2021) ......................................................... 18

*West Virginia v. EPA*,
    597 U.S. 697 (2022) ........................................................................ 17

*Williams v. Standard Oil Company of Louisiana*,
    278 U.S. 235 (1929) ........................................................................ 14

## Statutes

5 U.S.C. § 705 ...................................................................................... 10

Education Amendments of 1972, Pub. L. No. 92-318, title IX, § 901,
    June 23, 1972, 86 Stat. 373 .............................................................. 4

## Other Authorities

118 Cong. Rec. 5807 (1972) (Sen. Bayh) ............................................. 4

U.S. Bureau of Labor Statistics, *A look at women's education and
earnings since the 1970s*, TED: The Economics Daily (Dec. 27,
2017) ................................................................................................... 3

Women's Sports Found., *50 Years of Title IX* (May 2022) ..................... 3

## Regulations

34 C.F.R. § 106.33 .............................................................................. 17

Nondiscrimination on the Basis of Sex in Educ. Programs or
Activities Receiving Fed. Fin. Assistance, 89 Fed. Reg.
33,474 (Apr. 29, 2024) .................................... 4, 5, 12, 13, 14, 15, 17

Nondiscrimination on the Basis of Sex, 40 Fed. Reg. 24,128
(June 4, 1974) .................................................................................... 4

# INTRODUCTION

Fifty years ago, Congress revolutionized education by enacting Title IX to help close the gap between women and men, promising equal opportunities for both. The law has been a success. But a different sort of revolution took place two months ago. Department of Education officials published a new rule that reimagines sex discrimination to cover distinctions Congress never intended, adding concepts like gender identity and sometimes even prioritizing these concepts over sex. The result is Title IX's primary beneficiaries are denied their promised benefits.

This turns Title IX upside down, exchanging a well-established, biological, and binary concept of sex for a recent, subjective, and fluid concept of identity. This usurps Congress's role, enlarges agency power, and makes Title IX incoherent. For example, under the Department's new rule, women must share showers with some men (but not share dorm rooms); and women must share restrooms and overnight accommodations with some men (but not with men who identify as male or non-binary). None of this is justified.

This change will harm many, especially girls like Intervenor A.C. When a male student began competing on the girls' track team at A.C.'s middle school, that male quickly beat almost 300 different girls, knocking them down the leaderboard over 600 times, and taking A.C.'s spot in a championship meet. That male also shared a locker room with A.C.

and sexually harassed her in the locker room, using graphic, sexual language about her. The new rule would *authorize* some of this harm by allowing males who identify as female into women's locker rooms.

This new rule also violates the constitutional rights of educators across the country, like members of Christian Educators Association International. Its members believe sex is immutable. They want to live and speak consistent with this belief. But the new rule forces them to silence those views to avoid harassment complaints, to use inaccurate pronouns, and to use restrooms with students and staff of the opposite sex. At the same time, the new rule claims to preempt state laws that protect Intervenors' rights to speak and to privacy.

To prevent these irreparable harms, the court below issued a stay under 5 U.S.C. § 705 and a preliminary injunction, stopping the rule's enforcement while litigation proceeds. The Department appealed and seeks to stay that order pending review. Rather than move for a stay on the merits, the Department seeks to limit the injunction's scope, saying it covers more than the challenged provisions. But courts need not conduct a severability analysis before entering an order preserving the status quo. Nor has the Department proven the new rule can be severed. Regardless, the Department forfeited this argument below.

As for the equities, the Department seeks a piecemeal rollout of the rule, beginning August 1. That would require schools to comply with

and train their teachers quickly and partially. That would create confusion and waste resources. It would be better and less burdensome to let schools update their policies and practices and re-train their staff just once, if at all, when this litigation ends. That's especially true when the Department has no answer for how certain provisions would apply without the challenged provisions that comprise the rule's foundation.

This Court should deny the Department's request and so preserve the status quo that has existed for half a century.

## BACKGROUND

*Title IX.* Congress passed Title IX to ensure equal opportunities for women by prohibiting discrimination in educational opportunities "on the basis of sex." App'x in Supp. of Intervenors-Appellees' Resp. in Opp. to Emergency Mot. for Stay (App.) 003. Title IX has had resounding success. In 1970, nearly 34% of working women lacked high-school diplomas; in 2016, it was only 6%.[1] In 1972, only 7% of high-school varsity athletes were women; in 2018, it was 43%.[2] And the Act achieved that success by peppering the statute with explicit and repeated references to the biological, binary categories of two sexes, including a rule of construction recognizing respect for "personal

---

[1] U.S. Bureau of Labor Statistics, *A look at women's education and earnings since the 1970s*, TED: The Economics Daily (Dec. 27, 2017), https://tinyurl.com/mrrjr75a.

[2] Women's Sports Found., *50 Years of Title IX* at 12 (May 2022), https://perma.cc/TN74-PJ4S.

privacy." 118 Cong. Rec. 5807 (1972) (Sen. Bayh); Education Amendments of 1972, Pub. L. No. 92-318, title IX, § 901, June 23, 1972, 86 Stat. 373; *see* 20 U.S.C. § 1686. Title IX also includes regulations— both mandated and implicitly approved by Congress (under the so-called Javits Amendments)—that "require[]" a school "to provide separate teams for men and women in situations where the provision of only one team would not 'accommodate the interests and abilities of members of both sexes.'" Nondiscrimination on the Basis of Sex, 40 Fed. Reg. 24,128, 24,134 (June 4, 1974) (now codified at 34 C.F.R. § 106.41(c)(1)).

*The New Title IX Rule*. Now, the Department has reinterpreted Title IX, citing *Bostock v. Clayton County*, 590 U.S. 644 (2020), as cover. Nondiscrimination on the Basis of Sex in Educ. Programs or Activities Receiving Fed. Fin. Assistance, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (the "Rule").

Start with the main change. The Rule redefines sex discrimination to include distinctions based on "gender identity," "sex stereotypes," and other conduct. 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.10). Such distinctions violate Title IX, the Rule says, because they "necessarily" require noticing "a person's sex," even if "sex" means the "physiological or 'biological distinctions between male and female,' as the Supreme Court assumed in *Bostock*." *Id.* at 33,802. Read with other provisions, this change imposes multiple new mandates.

Take the new "de minimis harm" rule. It allows some sex distinctions and forbids others based on whether they cause "more than de minimis harm." *Id.* at 33,887 (to be codified at 34 C.F.R. § 106.31(a)(2)). Absent an express exemption, any policy or "practice that prevents a person from participating in" a covered "activity consistent with [their] gender identity" causes more than de minimis harm. *Id.* at 33,820. So together, § 106.10 and § 106.31(a)(2) forbid sex distinctions that deny a student access to sex-specific activities or spaces "consistent with [their] gender identity." *Id.* at 33,818.

What's more, the Rule imposes a "broader standard" for hostile-environment claims. 89 Fed. Reg. at 33,498. Harassment now need only be severe *or* pervasive. App.126–29 (¶¶ 216–29). Complainants need not "demonstrate any particular harm," or show that the conduct denied them access to the educational program. 89 Fed. Reg. at 33,511. Harassment can be anything the student considers "unwelcome" or that "limits" the student's ability to benefit from an educational program. *Id.* at 33,884 (to be codified at 34 C.F.R. § 106.2). The Department recognizes that this standard is "broader" than the Supreme Court's interpretation of Title IX in *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999). 89 Fed. Reg. at 33,498. Together, §§ 106.10 and § 106.2 also impose a new mandate, forcing students and school staff to avoid saying sex is binary and to use incorrect pronouns, among other things. This violates the First Amendment.

These are just two of many examples. The Rule's new definition of sex discrimination affects how many provisions will apply.

*Intervenors*. A.C. is a female athlete and high-school student. App.152 (¶¶ 1–2). A.C. throws shot put and discus, runs track, and plays in the marching band. App.152, 161 (¶¶ 2, 63). When A.C. was in middle school, a male student who identifies as a girl named B.P.J. competed on A.C.'s school track team. App.153 (¶¶ 7–8). B.P.J. regularly beat A.C. and other girls. App.153–57 (¶¶ 9–35). So far, B.P.J. has beat nearly 300 girls in over 600 individual instances. App.157 (¶ 36). B.P.J. also changed in the girls' locker room and sexually harassed A.C. and her teammates. App.157–60 (¶¶ 40–49, 51–61). A.C. does not want to compete with or share private spaces with any male, no matter how he identifies. App.161–62 (¶¶ 63–69). But the new Rule threatens her right to privacy.

Christian Educators Association International is a membership organization of Christian educators. App.166 (¶¶ 4–7). Some of its members want to express their religious belief that sex is an immutable characteristic. App.182–222. These members have been asked to use inaccurate pronouns, and they fear the Rule will compel them to speak these words while forbidding them from expressing their religious beliefs. *Id.* Some also fear their schools will open shared restrooms to members of the opposite sex. App.186–87 (¶¶ 28–32); App.220–21 (¶¶ 39–47). The group seeks to protect its members' constitutional and

statutory rights to freedom of speech and to use single-sex restrooms without the opposite sex. App.177–78 (¶¶ 79–81); *see* Tenn. Code Ann. § 49-6-5102(b)(1) (pronouns); § 49-2-805(a) (restrooms).

*Procedural Background.* Intervenors and six states—Tennessee, Kentucky, Ohio, Indiana, Virginia, and West Virginia—challenged the Rule, claiming it violates the APA because it is inconsistent with law, beyond statutory authority, contrary to the U.S. Constitution, and arbitrary and capricious. App.137–47. They alleged the Rule redefines sex discrimination and other key terms to forbid conduct that Title IX never meant to cover and to require conduct that Title IX prohibits. *Id.* They moved to stay and preliminarily enjoin the Rule. The district court granted that motion, prohibiting the Department from "implementing, enacting, [or] enforcing" the Rule. App.093.

The Department appealed. It also moved the district court to stay its order to the extent the order reaches beyond 34 C.F.R. § 106.31(a)(2) and 34 C.F.R. § 106.2's definition of "hostile environment harassment" as applied to discrimination on the basis of gender identity. Per the Department, the § 705 stay should not affect certain provisions or applications of the Rule not challenged by the plaintiffs. The parties have briefed this matter before the trial court, but no ruling has issued. On Monday, the Department moved this Court for a stay on appeal. Emergency Mot. for a Partial Stay Pending Appeal (Emergency Mot.). This Court should deny that request and preserve the status quo.

**ARGUMENT**

To determine whether to grant a stay pending appeal, this Court considers (1) likelihood of success on appeal; (2) whether the applicant will suffer irreparable injury; (3) the hardship a stay inflicts on other parties; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Department must prove that the challenged ruling will likely be reversed. *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). That is a "heavy burden." *Ohio State Conf. of NAACP v. Husted*, 769 F.3d 385, 389 (6th Cir. 2014). And the Department has failed to meet it.

## I. The Department is unlikely to succeed in proving that the district court's preliminary injunction is improper.

The Department says the injunction below is "overbroad" because Plaintiffs do not challenge every provision and possible application of the Rule. Emergency Mot. 10–20. It says most revisions "have nothing to do with gender identity," so the Rule can be severed. *Id.* at 11. But courts need not pick through new rules with a fine-tooth comb before preliminarily staying their effective date. And the Department hasn't shown the Rule is severable anyway—misapplying *Bostock* and showing only a handful of applications out of hundreds to make its case. That errant and "bare-bones argument" does not suffice. *Doster v. Kendall*, 54 F.4th 398, 442 (6th Cir. 2022), *vacated for mootness*, 114 S. Ct. 481 (2023). And in any event, the Department forfeited this argument.

## A.     Severance is not required at this preliminary stage.

The Department says the district court should have severed the rule. Emergency Mot. 10. But severability considers whether "what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987). It's a finishing tool. The Department "confuses the role of a preliminary injunction with that of a permanent one." *Doster*, 54 F.4th at 441. Preliminary injunctions seek to "preserve the status quo … until the court has a meaningful chance to resolve the case on the merits." *Id.*; *see Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 435 (6th Cir. 2016). Preservation trumps precision at this stage.

Indeed, courts have "wide latitude" in crafting temporary relief. *Doster*, 54 F.4th at 442 (citing *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam)). This includes the freedom to give "status-quo relief" that is "broader than the ultimate relief" a party may receive. *Id.*; *accord Balow v. Mich. State Univ.*, 24 F.4th 1051, 1061 (6th Cir. 2022); *Roe v. Dep't of Def.*, 947 F.3d 207, 232–34 (4th Cir. 2020).

Such relief is especially apt here. It both stays a partial rollout that would confuse and impose expensive compliance costs on regulated parties, § II, and respects the APA—which directs courts to delay "the effective date" of agency action when required to stop irreparable harm and "to preserve" the status quo pending review. 5 U.S.C. § 705.

Because the Rule has but one effective date and is but one agency action, its provisions stick together at this stage.

No matter whether the Rule is severable, the district court rightly issued an injunction that preserves the status quo pending review.

## B. The Department has not shown the Rule is severable.

The Department has not shown the Rule is severable anyway. To determine severability, courts test whether unchallenged provisions will still operate as the agency intended. *Alaska Airlines*, 480 U.S. at 685. A coherent balance of remaining provisions is necessary but not sufficient. *Id.* at 684. It must "function in a *manner* consistent with" the agency's intent. *Id.* at 685. Even then, courts must determine whether the Department would've enacted the remainder without the unlawful provisions. If not, the whole rule must be set aside. *Id.* Here, the Department has not proven the Rule is severable.

### 1. The Department has not shown that the Rule can stand without the challenged provisions.

First, the challenged provisions are essential; the other provisions cannot function as designed without them. Take 34 C.F.R. § 106.10, which redefines sex discrimination to cover distinctions based on gender identity and other conduct. This redefinition informs and pervades the entire Rule, including provisions the Department deems severable. For example, the Department points to future 34 C.F.R. § 106.8, which addresses the appointment and duties of Title IX coordinators, the

recipient's duty to publish a notice of nondiscrimination, and the requirement that it maintain records for at least seven years. But these cannot apply apart from the challenged provisions because compliance means something different if the challenged provisions—34 C.F.R. §§ 106.10, 106.31(a)(2), and 106.2—are fully in effect.

Consider that a school must record "each notification the Title IX Coordinator receives of information about conduct that reasonably may constitute sex discrimination." 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.8(f)(2)). Whether "conduct reasonably may constitute sex discrimination" turns on the meaning of sex discrimination, which in turn depends both on the Rule's new definition and on whether the de-minimis-harm provision applies. A school cannot maintain compliant records—much less investigate anything that "*may* constitute sex discrimination"—without knowing what sex discrimination means.

The Department's other examples are also intertwined with the Rule's unlawful provisions. It cites a "recipient's response" duty to sex-discrimination claims, 89 Fed. Reg. at 33,888–91 (to be codified at 34 C.F.R. § 106.44), new "grievance procedures" for such claims, "including sex-based harassment," 89 Fed. Reg. at 33,891–95 (to be codified at 34 C.F.R. §§ 106.45–106.46), and new "prohibit[ions on] retaliation," 89 Fed. Reg. at 33,896 (to be codified at 34 C.F.R. §§ 106.2, 106.71). Emergency Mot. 11. Schools cannot implement these provisions without knowing the *meaning* of sex discrimination and what defines

harassment, the latter of which even the Department's proposed partial stay would not fully supply. The Department fails to say how schools can be sure they are in compliance.

The Department also cites a provision requiring "access [to] a lactation space," which cannot be a bathroom, must be "clean, shielded …, free from intrusion …, and may be used … for expressing breast milk or breastfeeding as needed." 89 Fed. Reg. at 33,888 (to be codified at 34 C.F.R. § 106.40(b)(3)(v)). But the application of this lactation provision appears to change depending on whether the de-minimis-harm provision is in effect. For example, the de-minimis-harm provision would seem to require males who identify as female to access these private lactation spaces, just as the Rule requires for restrooms, showers, and locker rooms. Even if the de-minimis-harm provision were ultimately held valid and severable, piecemeal implementation of the Rule alone would overburden schools needlessly.

Second, the Department has not shown it would have enacted the provisions it seeks to sever absent the unlawful portions. To be sure, the Department cites a routine severability clause, but "the ultimate determination of severability will rarely turn on … such a clause." *United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968). Such a clause cannot save a rule when the remaining provisions are otherwise unjustified. *Ohio v. EPA*, No. 23A349, 603 U.S. ---, 2024 WL 3187768, at *8 (U.S. June 27, 2024).

Here, the Department justifies the Rule and its high costs based on benefits it expects from implementing the challenged provisions. 89 Fed. Reg. at 33,861–62. But without those benefits, the Department does not show the costs are worth it.

Litigation positions aside, this Court should not assume the Department "would have preferred to apply the [Rule] in as many" situations "as possible" if "key" provisions were held invalid. *United States v. Booker*, 543 U.S. 220, 248 (2005). The Rule is "highly complex" and riddled with "interrelated provisions." *Id.* It is "one coherent policy," *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 194 (1999), principally ensuring that students are not denied educational opportunities, *see* 89 Fed. Reg. at 33,476 (Rule aims "to fully effectuate … sex discrimination prohibition."). And the Department has said its provision redefining sex discrimination is "essential" to this goal. *Id.* at 33,500. The Department would not have been content without it.

In sum, the challenged provisions are essential to the Rule. And the other provisions cannot function as intended without them. The Department has not proven the Rule is severable.

### 2. The Department has not shown that the stay and injunction below is overbroad as to certain applications of the challenged provisions.

Moving from provisions to applications, the Department says the Rule's redefinition of sex discrimination in § 106.10 should take effect

as planned. Emergency Mot. 14–19. It says *Bostock* requires the change and Plaintiffs "identify no harm … from that provision." *Id.* at 15. Not so.

For starters, § 106.10, which is the heart of the rule, does harm Plaintiffs. It redefines sex discrimination to "include[ ] discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 34 C.F.R. § 106.10; *see* App.121–23 (¶¶ 188–98). As the court below held, this provision "permeates" other regulations. App.090. Plaintiffs' harm is directly traced to this pervasive change. But even if the provision imposed no burden on Plaintiffs, that would not mean it is severable. *E.g.*, *Williams v. Standard Oil Co. of La.*, 278 U.S. 235, 242–44 (1929) (holding inseverable provisions that did not burden parties).

In addition, *Bostock* does not justify the change. First, *Bostock* did not change the meaning of "sex" in Title VII or Title IX but accepted that "sex" means biologically male or female. App.020–28. Nor do the new rules purport to equate gender identity and sex. *E.g.*, 89 Fed. Reg. at 33,807. That is fatal because *Bostock* said gender-identity discrimination is a form of sex discrimination; it did not say all sex distinctions are a form of gender-identity discrimination. If that were true, Title IX would be at war with itself because it permits sex-separated facilities and sports teams.

Second, *Bostock* dealt with hiring and firing in employment, while Title IX deals with educational opportunities. "[T]he school is not the workplace." *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 808 (11th Cir. 2022). "Title VII … is a vastly different statute from Title IX." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). *Bostock* didn't "purport to address bathrooms, locker rooms, or anything else of the kind." 590 U.S. at 681. As this Court has repeatedly held, *Bostock*'s logic does not translate into other contexts, including Title IX. App.024. That's because Title IX accounts for the "physical differences between men and women," which "are … enduring." *United States v. Virginia*, 518 U.S. 515, 533 (1996) (cleaned up).

Third, *Bostock* held that "sex is not relevant to the selection, evaluation, or compensation of employees" under Title VII, which treats sex like race, national, origin, and other protected classifications. 590 U.S. at 660 (cleaned up). But Title IX *only* covers sex, which often *is* relevant to promoting educational opportunities. App.023–24. Take sports. Under *Bostock*, employers cannot consider sex when hiring or firing employees. Applied to sports, that logic would mean schools cannot consider sex when creating sports teams. But "athletics programs *necessarily* allocate opportunities separately for male and female students." *Cohen v. Brown Univ.*, 101 F.3d 155, 177 (1st Cir. 1996). Title IX sometimes requires schools to consider sex to protect equal opportunities for students, particularly female athletes.

Fourth, *Bostock*'s logic contradicts the Rule's new distinctions. For example, the Rule in theory allows boys' and girls' restrooms, just assigned by gender identity instead of sex. 89 Fed. Reg. at 33,818. But according to the Rule, facilities designated by gender identity still discriminate based on sex: "it is impossible to discriminate against a person because of their … gender identity without discriminating against that individual based on sex." *Id.* at 33,816 (cleaned up). So on the Department's logic, the Rule draws distinctions forbidden by Title IX's general prohibition.

The Department's logic works only if the rule allowing sex-specific spaces in fact redefines "sex" to mean "gender identity." *E.g.*, 34 C.F.R. § 106.33. But the Department has disclaimed that argument, *e.g.*, 89 Fed. Reg. at 33,807, barring the agency from raising it now, *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (holding review is "limited to the grounds that the agency invoked when it took the action" (cleaned up)). So the *statute* forbids schools from considering sex per the Department's take on *Bostock*, while the Rule sometimes overrides the statute, discards *Bostock*, and allows these forbidden distinctions. In other words, "sex" means "sex," except when it means gender identity. Nothing supports this illogic.

The Rule's redefinition of sex discrimination is not a "straight-forward application of *Bostock*." Emergency Mot. 17. It is a "highly con-

16

sequential" and "transformative" change to our nation's educational system. *West Virginia v. EPA*, 597 U.S. 697, 724 (2022). The Department seeks to crucially disrupt "the balance between federal and state power" in an area traditionally regulated by the states. *Sackett v. EPA*, 598 U.S. 651, 679 (2023). And it does so with no "clear statement" from Congress. App.030. Such a change exceeds the Department's power.

### C. The Department forfeited its severance argument.

Critically, the Department forfeited its severance argument below. The Department did not timely or meaningfully brief the point. *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984). To preserve an argument, a party must do more than cursorily mention it. Issues mentioned "in a perfunctory manner," without development argument, are "waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *see Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (Courts need not "search the record and construct arguments. Parties must do that for themselves.").

To be sure, the Department mentions "severability" in the last two sentences of its preliminary-injunction response. App.250. But this scant reference does not preserve the argument. The Department failed to brief the issue or put forth any meaningful "effort at developed argumentation." *McPherson*, 125 F.3d at 995. It did not specify in sufficient detail how or why the challenged provisions of the rule could

be severed. This Court need not review "flesh" on appeal when bare "bones" appeared below. *Id.* at 995–96. The Department failed to preserve this issue, and that suffices to reject the Department's motion.

## II. The remaining factors favor preserving the status quo.

The remaining factors favor Plaintiffs. App.088. At this stage of the litigation, a line-item injunction "would be impractical." *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022) (per curiam). That's because a piecemeal rollout would impose significant, unnecessary compliance costs, and it would breed severe "uncertainty" among educators and students. *Id.*

### A. Piecemeal compliance costs are extraordinary.

Start with compliance costs. Unrecoverable compliance costs—like the costs to update policies and train educators and students—impose irreparable harm. App.082 (noting the "extraordinary" compliance costs here); *see Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) (identifying such costs as irreparable harm). The Department's request for a *partial* stay only worsens the harm. Schools across six states would have to comply not just once, but *at least* twice.

Within days, the Department would have schools amend their policies, alter their procedures, and train their employees on the new Rule. These schools must do this with no idea about how to interpret sex dis-

crimination in 34 C.F.R. § 106.10 consistent with Title IX's many allow-able sex distinctions. And they must apply the Rule's "broader" harass-ment provision, but not if the complaint alleges gender-identity harass-ment, in which case the prior regulations presumably remain in place. That piecemeal approach is troubling enough.

But then the Department would have every school do it all over again at the end of this litigation. It believes the whole Rule is lawful, Emergency Mot. 2, but its motion does not defend the de-minimis-harm provision or the harassment standard as applied to gender-identity dis-crimination. In other words, the Department will risk training and re-training to partially enforce its new Rule, which forces schools, educat-ors, and students to potentially suffer twice the compliance costs. This irreparably punishes those the Department is supposed to serve.

### B.    Piecemeal compliance would create confusion.

The stay below rightly delays the compliance date for the new rule entirely. It allows schools to avoid wholesale changes to their policies and practices until the conclusion of litigation, sparing teachers and students the confusion and headache of trying to learn and comply with shifting requirements. And make no mistake, piecemeal compliance would create confusion. For example, the Department never explains how schools can comply with § 106.10 if it goes into effect but § 106.31(a)(2) does not. How can schools prevent discrimination based

on gender identity under § 106.10 *and* prevent discrimination based on sex in circumstances where they cannot do both? No one knows.

Forcing teachers to enforce such contradictory requirements will mire them in regulatory mud and impede their ability to engage their students. The best approach is to delay the Rule's effective date and enjoin its enforcement entirely until litigation ends—precisely what the district court's order contemplates. *Cf. Ohio State Conf. of NAACP*, 769 F.3d at 389 (refusing to stay preliminary injunction when it would create "confusion" among affected individuals and risk placing regulated officials in a "position of trying to communicate" multiple, conflicting instructions). The court below got it right.

## CONCLUSION

Severance is not required at the preliminary litigation stage. Regardless, the Department has not shown that the Rule can stand without the challenged provisions, and it forfeited any severability argument by failing to timely and adequately present it below. The Court should not allow the Department's overreach to doubly harm schools with confusing rules and crushing compliance costs. The district court's injunction should stand.

Intervenors respectfully request that the Motion for Partial Stay Pending Appeal be denied.

Dated: July 3, 2024

Respectfully submitted,

*s/John J. Bursch*
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

James A. Campbell
Jonathan A. Scruggs
Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org
jwarner@ADFlegal.org

*Counsel for Intervenors-Appellees*

**CERTIFICATE OF COMPLIANCE**

This response complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because it contains 4,667 words, excluding parts exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b).

This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: July 3, 2024

*s/John J. Bursch*
John J. Bursch
*Counsel for Intervenors-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2024 I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/John J. Bursch*
John J. Bursch
*Counsel for Intervenors-Appellees*