No. 24-5588

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

STATE OF TENNESSEE, et al.,

Plaintiffs-Appellees,

CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL;
A.C., by her next friend and mother Next Friend, Abigail Cross,

Intervenors-Plaintiffs-Appellees,

v.

MIGUEL CARDONA, in his official capacity as Secretary of Education, et al.,

Defendants-Appellants.

On Appeal from the United States District Court for the Eastern District of Kentucky

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A PARTIAL STAY**

*Of Counsel:*

LISA BROWN
   *General Counsel*
   *U.S. Department of Education*

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

MELISSA N. PATTERSON
STEPHANIE R. MARCUS
JACK STARCHER
DAVID L. PETERS
STEVEN A. MYERS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7232*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-1754*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ...........................................................................1

ARGUMENT ...........................................................................................................2

I. The preliminary injunction is grossly overbroad. ......................................2

    A. An injunction enjoining unchallenged provisions cannot be justified by ignoring the Department's express severability determination. ...........................................................................................2

    B. Plaintiffs misstate the effect of the challenged provisions in defending the injunction's overbreadth. .........................................6

        1. Plaintiffs articulate no harms stemming from § 106.10's basic prohibition on gender-identity discrimination. ........................7

        2. The district court's concerns regarding hostile-environment harassment under § 106.2 do not support a blanket injunction of that provision. ................................................9

II. The remaining factors favor a partial stay. ................................................9

CONCLUSION ...................................................................................................... 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION AND SUMMARY

Plaintiffs' claims concern a narrow subset of issues relating to the Rule's application to sex-differentiated restrooms, locker rooms, and pronouns with respect to transgender individuals. But even taking plaintiffs' claims at face value, the district court's sweeping preliminary injunction of the entire Rule was an abuse of discretion because it was "so broad [that] there is a risk that it restrains legal conduct," *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 364 (6th Cir. 2022), and because it significantly exceeds what is necessary to address plaintiffs' purported harms. Defendants therefore sought narrow relief, asking this Court to stay the injunction pending appeal only to the extent it sweeps broader than necessary, including by enjoining provisions that plaintiffs never challenged. *See* Mot. for Partial Stay (Mot.). Nothing in the opposition memoranda filed by the state plaintiffs or plaintiff-intervenors (together, plaintiffs) undermines defendants' entitlement to that modest relief. *See generally* States' Opp'n; Intervenors' Opp'n. On the contrary, plaintiffs' continued focus on sex-differentiated spaces and language reinforces the propriety of the limited stay defendants seek.

# ARGUMENT

I. **The preliminary injunction is grossly overbroad.**

   A. **An injunction enjoining unchallenged provisions cannot be justified by ignoring the Department's express severability determination.**

Plaintiffs and the district court focused on the application of a handful of the Rule's provisions to bathrooms, locker rooms, and pronouns. *See generally* Mot. 6-8. Yet the Rule effects many changes to Title IX's regulations that have nothing to do with those issues, Mot. 4-5, and plaintiffs identify no cognizable harm as a result of these provisions. The district court erred in enjoining these unchallenged provisions despite acknowledging that "[e]ach subsection in which [the challenged] provisions appear contains a severability clause." Mem. Op., RE 100, Page ID # 2085.

   1. Plaintiffs' approach to severability, under which a reviewing court would disregard an agency's express severability determination in favor of its own judgment regarding the value of a rule after certain portions are held unlawful, is inconsistent with governing law. *See* States' Opp'n 11-12; Intervenors' Opp'n 10-13. Instead, when a rule provision is deemed invalid, the remainder may go into effect "unless there is 'substantial doubt' that the *agency* would have left the balance of the rule intact." *Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 136 (D.C. Cir. 2022) (emphasis added). Defendants are not asking the Court to make "policy judgments," States' Opp'n 12, or "assume the Department" would have implemented unchallenged portions of the Rule, Intervenors' Opp'n 13; they are asking this Court

2

to heed the policy judgment that the Department already made explicit in the Rule itself—that the provisions of the Rule are severable and that as much of the Rule as possible should go into effect. Instead, it is plaintiffs' approach—under which a court would have to gauge whether a rule is worthwhile even absent certain provisions—that would require courts to make such judgments, even if it means ignoring an agency's express determination regarding the independent value of aspects of its own rule. Plaintiffs' citation to *Ohio v. EPA*, No. 23A349, 2024 WL 3187768 (U.S. June 27, 2024), provides no support for this unprecedented approach to severability. There, the Court stayed the challenged provisions of a rule that injured the challengers because it concluded that EPA had likely failed to adequately explain them. *Id.* at \*8. Under *Ohio*, a court may thus grant relief as to provisions of a rule that it concludes are likely invalid and that injure the challengers; it does not support disregarding an agency's express severability determination by extending relief to *valid* provisions that cause the plaintiffs no harm.

In any event, plaintiffs' contention that the Rule cannot function without the challenged handful of provisions is mistaken. There is no reason why schools cannot do things like keep records about sex discrimination, provide fair grievance procedures for sex-discrimination claims, or publish notices of nondiscrimination without applying those requirements to the narrow subset of issues concerning bathrooms, locker rooms, and pronouns upon which plaintiffs focus. *See* States' Opp'n 11; Intervenors' Opp'n 10-11. Nor is there any reason to conclude that, if the

3

requested stay were entered, anyone who is not lactating would be entitled to access lactation spaces. *See* Intervenors' Opp'n 12. Plaintiffs would suffer no harm, nor would the Court be deprived of the ability to meaningfully review the challenged aspects of the Rule, if the unchallenged provisions took effect.

2. More broadly, plaintiffs suggest that when a district court enters a preliminary injunction, it need not even consider severability. *See* States' Opp'n 10, 18; Intervenors' Opp'n 2, 8-9. But while a court has a degree of discretion in crafting relief, it abuses that discretion when it enters a preliminary injunction so "broad [that] there is a risk that it restrains legal conduct." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 364 (6th Cir. 2022). While there may be circumstances in which "status-quo relief might look broader than the ultimate relief," plaintiffs ignore that this principle exists to "stop[] a defendant's threatened conduct from causing (irreparable) harm until the court has a meaningful chance to resolve the case on the merits." *Doster v. Kendall*, 54 F.4th 398, 441-42 (6th Cir. 2022), *vacated as moot*, 144 S. Ct. 481 (2023). There is no principle supporting the suggestion that courts may disregard "precision at this stage" and abandon any attempt to match the preliminary relief to the harms asserted. Intervenors' Opp'n 9. Nor is there any authority for the proposition that the Court should skip over a severability analysis simply because some parties might find it easier to implement a broader injunction than a tailored

4

one, *contra* States' Opp'n 18; Intervenors' Opp'n 19-20.[1]  If district courts routinely awarded preliminary relief far broader than that available on final judgment, district courts would rapidly become deluged with preliminary-injunction motions.

3.  Plaintiffs further suggest that this Court need not engage in a severability analysis because they sought relief under 5 U.S.C. § 705.  *See* Intervenors' Opp'n 9-10; States' Opp'n 9-10.  That is wrong for at least two reasons.  First, *contra* States' Opp'n 6; Intervenors' Opp'n 2, the district court did not invoke § 705 to postpone the Rule's effective date; it enjoined defendants from enforcing the Rule.  *See* Mem. Op., RE 100, Page ID # 2088 (Defendants "are ENJOINED and RESTRAINED" (boldface omitted)).  More fundamentally, § 705 contemplates preliminary relief subject to traditional equitable principles; it expressly provides that courts may delay an action's effective date only "to the extent necessary to prevent irreparable injury."  5 U.S.C. § 705; *see* H.R. Rep. No. 79-1980, at 43 (1946) (explaining that this relief "is equitable").  As the Supreme Court recently explained, "[w]hen Congress empowers courts to grant equitable relief, there is a strong presumption that courts will exercise that authority in a manner consistent with traditional principles of equity."  *Starbucks*

---

[1] *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023), *cited in* States Opp'n 18 n.7, and *Gomez v. Trump*, 485 F. Supp. 3d 145, 203-04 (D.D.C. 2020), *cited in* States' Opp'n 18 n.7, address the availability of nationwide relief; they do not permit courts to ignore severability principles to enjoin more of a rule than necessary to avoid plaintiffs' asserted injuries.  *Ohio State Conference of the NAACP v. Husted*, 769 F.3d 385, 389-90 (6th Cir. 2014), *cited in* States' Opp'n 20, dealt with election procedures and does not address severability.

*Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024).  For the reasons discussed throughout, wholesale postponement of the entire Rule's effective date is not necessary to avoid irreparable injury when plaintiffs challenge only a handful of provisions.[2]

  4.  Finally, intervenors' argument that defendants waived their severability arguments, Intervenors' Opp'n 17-18, is unquestionably wrong, which is presumably why the states make no such contention.  Defendants' oppositions to plaintiffs' motions for preliminary relief specifically addressed severability, *see* Defs.' Opp'n to Pls.' Mot., RE 73, Page ID # 1573; Defs.' Opp'n to Intervenors' Mot., RE 91, Page ID # 1818-19, and both the states and intervenors responded in their reply briefs, *see* States' Reply, RE 92, Page ID # 1839; Intervenors' Reply, RE 99, Page ID # 1993.  When defense counsel reminded the district court that "we did argue for severability," Tr., RE 109, Page ID # 2141, the court agreed, *see id.* ("Yes, I know.  I understand that.").  And the district court's opinion expressly addressed these arguments.  *See* Mem. Op., RE 100, Page ID # 1085.

  **B.** **Plaintiffs misstate the effect of the challenged provisions in defending the injunction's overbreadth.**

Even as to the challenged provisions, the injunction is overbroad insofar as it enjoins provisions—and potential applications thereof—that do not cause plaintiffs the harms on which the district court relied.

---

  [2] Even if plaintiffs were correct that 5 U.S.C. § 706 authorizes vacatur, *see* States' Opp'n 10, and that § 705 is a temporary form of vacatur, plaintiffs offer no response to courts' routine vacatur of agency actions only in part.  *See* Mot. 12 n.4.

## 1. Plaintiffs articulate no harms stemming from § 106.10's basic prohibition on gender-identity discrimination.

Plaintiffs' quarrel with § 106.10 rests upon a fundamental mischaracterization of what that provision does. As in *Bostock v. Clayton County*, 590 U.S. 644 (2020), this provision provides that discrimination on the basis of gender identity is a form of prohibited sex discrimination without "purport[ing] to address bathrooms, locker rooms," or other sex-differentiated contexts. *Id.* at 681. Section 106.10 therefore simply means that, just as under *Bostock* an employer cannot fire or discriminate against an employee for being gay or transgender, a school cannot expel or otherwise discriminate against a student for being gay or transgender. In contrast, § 106.31(a)(2) is the provision stating that recipients may not carry out otherwise permissible sex separation in a manner that causes an individual more than de minimis harm. *See also* States' Opp'n 7 (acknowledging that § 106.31(a)(2) is the provision addressing how recipients may "divide intimate spaces"). Indeed, intervenors appear to concede that *Bostock* declared "gender-identity discrimination … a form of sex discrimination" *without* addressing whether "all sex distinctions are a form of gender-identity discrimination," Intervenors' Opp'n 14—and as defendants detailed, § 106.10 has precisely the same effect. Thus, the intervenors are wrong to suggest that "the Department never explains how schools can comply with § 106.10 if it goes into effect but § 106.31(a)(2) does not," Intervenors' Opp'n 19: in that scenario, the Department could not find a school in violation of its regulations for barring a

transgender girl from the women's restroom, but it could if the school barred her from the cafeteria.

The rule set forth in § 106.10 straightforwardly applies *Bostock*'s textual analysis to the materially similar text of Title IX. *See* Mot. 17-19. But even apart from defendants' likelihood of success on that issue, the Court should grant defendants' motion because plaintiffs have not established that they will suffer irreparable harm if prohibited from engaging in conduct that all parties agree would be discrimination against students simply for being gay or transgender. Indeed, while plaintiffs express concern about bathrooms, locker rooms, and pronouns, no plaintiff expresses any desire to otherwise discriminate against students for being gay or transgender.

It is no response that defendants opined, prior to the Rule's issuance, that Title IX requires recipients to afford transgender individuals access to restrooms and locker rooms consistent with their gender identity. *See* States' Opp'n 14-15. This case challenges the Rule, and as discussed, § 106.31(a)(2) is the only Rule provision that addresses which bathroom transgender students must be able to access. Accordingly, the requested stay—under which § 106.31(a)(2) would remain enjoined pending appeal—would prohibit the Rule from being applied to require that transgender students be permitted to access the bathroom or locker room consistent with their gender identity. There is no justification for enjoining a separate provision that plaintiffs do not wish to violate and that causes them no harm.

8

### 2. The district court's concerns regarding hostile-environment harassment under § 106.2 do not support a blanket injunction of that provision.

The injunction is also overbroad with respect to 34 C.F.R. § 106.2. That provision defines many terms, but plaintiffs challenge only its definition of hostile-environment harassment. Moreover, the states are incorrect to suggest that the district court found that definition vague as a general matter, States' Opp'n 17; its analysis focused on that definition's application to matters regarding gender identity. *See* Mem. Op., RE 100, Page ID # 2044, 2046, 2047, 2048, 2050. There is a profound "mismatch between" the harms the district court perceived "and the breadth of the injunction." *Union Home Mortg. Corp.*, 31 F.4th at 364. That is particularly so given the Department's clarity that "applications" of provisions are as severable as individual provisions themselves, *see* Mot. 19, and the straightforward option of enjoining the definition of hostile-environment harassment as applied to discrimination on the basis of gender identity.

### II. The remaining factors favor a partial stay.

Finally, the balance of harms and the public interest tilt decisively in favor of the requested stay, since "the eradication of discrimination by race and sex promotes public interests." *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1359 (6th Cir. 1975). That stay would restore provisions that plaintiffs have not challenged or that prohibit conduct in which plaintiffs do not intend to engage—including prohibitions on forcing a student to sit in the back of a classroom because he is gay or transgender,

sexually harassing a cisgender woman in a manner that meets the regulatory definition of hostile-environment harassment, or requiring a new mother to express breastmilk in a bathroom stall. And while plaintiffs disclaim an intent to engage in such discrimination, *see* States' Opp'n 21-22, that does not affect the need for a stay given the vast number of recipients within the jurisdictions to which the injunction applies.

Nor does the time it took defendants to propose, finalize, and issue the Rule justify the maintenance of an overbroad injunction. *See* States' Opp'n 22-23. Defendants' careful compliance with notice-and-comment requirements is a reason to let the majority of the Rule's provisions take effect—not to delay their implementation while other provisions' validity is litigated.

Plaintiffs allege they will incur costs to comply with the Rule, but those alleged costs flow from Rule applications that either have not been challenged or would remain enjoined under the requested stay. *See, e.g.*, *Haaland v. Brackeen*, 599 U.S. 255, 296 (2023) (Texas could not claim standing to challenge child-custody placement preferences based on costs of recordkeeping and notice requirements: "Texas would continue to incur the complained-of costs even if it were relieved of the duty to apply the placement preferences."). And to the extent that plaintiffs have delayed taking steps to comply with *any* of the Rule's provisions because they assumed that even unchallenged provisions would be enjoined, *see, e.g.*, States' Opp'n 2, 19-20; Intervenors' Opp'n 2-3, 19-20, defendants bear no responsibility for such assumptions. Finally, even if any of these costs were relevant, they would pale in

10

comparison to the federal government's interest in stamping out sex discrimination.

*Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) (explaining that public interest in naval training "outweighed" irreparable injury to wildlife).

## CONCLUSION

The preliminary injunction should be stayed to the extent it extends beyond the following 2024 Rule provisions: (i) 34 C.F.R. § 106.31(a)(2), and (ii) 34 C.F.R. § 106.2's definition of "hostile environment harassment" as applied to discrimination on the basis of gender identity. The Department respectfully requests a decision by July 12.

Respectfully submitted,

*Of Counsel:*
LISA BROWN
    *General Counsel*
    *U.S. Department of Education*

BRIAN M. BOYNTON
    *Principal Deputy Assistant Attorney*
    *General*

MELISSA N. PATTERSON
STEPHANIE R. MARCUS
JACK E. STARCHER
DAVID L. PETERS
*/s/ Steven A. Myers*
STEVEN A. MYERS

    *Attorneys, Appellate Staff*
    *Civil Division, Room 7232*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 305-1754*

July 2024

# CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,583 words. It also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ *Steven A. Myers*
Steven A. Myers

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2024, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Steven A. Myers
Steven A. Myers