No. 24-5588

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

STATE OF TENNESSEE, et al.,

                            Plaintiffs-Appellees,

v.

MIGUEL CARDONA, et al.,

                            Defendants-Appellants.

On Appeal from an Order of the
United States District Court for the Eastern District of Kentucky
Case No. 2:24-cv-72, Hon. Danny C. Reeves

## BRIEF OF ORGANIZATIONS SERVING PREGNANT AND PARENTING STUDENTS AS AMICI CURIAE SUPPORTING APPELLANTS AND A STAY

                                      Jim Davy
                                      ALL RISE TRIAL & APPELLATE
                                      P.O. Box 15216
                                      Philadelphia, PA 19125
                                      (215) 792-3579
                                      jimdavy@allriselaw.org

                                      Counsel for *Amici Curiae*

July 9, 2024

# CORPORATE DISCLOSURE STATEMENT

Amici are nonprofit organizations. They have no parent corporations, and no publicly held corporation owns any portion of any of them.

# TABLE OF CONTENTS

**Page(s)**

Corporate Disclosure Statement ............................................................. i
Table of Authorities ................................................................................ iii
Introduction ............................................................................................ 1
Argument ................................................................................................ 3
   I.   The Rule is essential to ensure that pregnant and postpartum students can access education. ....................................... 3
   II.  The Rule protects the health of students and their pregnancies. ................................................................................... 6
Conclusion ............................................................................................ 12
Certificates ........................................................................................... 1a

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Pfeifer v. Commonwealth of Pa. Bd. of Probation & Parole*,
  __ F.4th __, No. 21-1081 (3d Cir. July 3, 2024) ..................... 4

**Statutes**

20 U.S.C. § 1681 ............................................................................... 1

**Other Authorities**

Andrew Sum et al., *The Consequences of Dropping Out of High School*
  (Oct. 2009) ................................................................................. 6

*Choosing Wisely Recommendation #307*, Am. Acad. of Fam. Physicians
  .................................................................................................. 10

Cynthia Costello, Inst. for Women's Pol'y Rsch., *Pathways to Postsecondary Education for Pregnant and Parenting Teens* (May 2014) ............................................................................................ 5

Dep't of Health & Hum. Res., *The Business Case for Breastfeeding* (2008) .......................................................................................... 11

*Effects of Homelessness on Families and Children*, Inst. for Children, Poverty & Homelessness (Sept. 2015) ................................... 8

*Ensuring Healthy Births Through Prenatal Support*, Ctr. Am. Progress (Jan. 31, 2020) ............................................................................ 8

Lindsey Rechlin Cruse et al., Inst. for Women's Pol'y Research, *Investing in Single Mothers' Higher Education* (Dec. 2019) ................. 6

Louisville Dep't of Pub. Health and Wellness, *Pregnant Workers Health Impact Assessment* (2019) ......................................................... 7

*Paid Parental Leave, Statement of Policy*, Am. Coll. of Obstetricians and Gynecologists (July 2016) ........................................................ 9

*Postpartum*, Cleveland Clinic (Feb. 27, 2024) ............................. 9

Rebecca A. Krukowski et al., *Correlates of Early Prenatal Care Access Among U.S. Women: Data from the Pregnancy Risk Assessment Monitoring System (PRAMS)*, 26 Maternal and Child Health J. 328 (2022) ........................................................................................... 9

*Recommendation and Benefits*, Ctrs. for Disease Control and Prevention (Mar. 17, 2023) ........................................................................... 11

# TABLE OF AUTHORITIES—continued

Page(s)
**Regulations**

34 C.F.R. § 106.40(b) (2000) .............................................................. 1  
45 C.F.R. § 86.40(b) (1975) ............................................................ 1, 9  
*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (to be codified at 34 C.F.R. § 106.40) ..................................................... 2, 4, 5, 7, 9, 11, 12

## INTERESTS OF THE AMICI CURIAE

*Amici* Justice + Joy National Collaborative, Mommies in the D, Generation Hope, the U.S. Breastfeeding Committee, and the National Nurse-Led Care Consortium are organizations that support pregnant and parenting students in school to ensure no student must choose between their education and their family. The U.S. Department of Education's new regulations strengthen and clarify the law's protections for pregnant and postpartum students. Accordingly, *Amici* have an interest in the questions before this Court: If the District Court's injunction stands unmodified, the pregnant and postpartum students *Amici* serve will suffer grave disruptions to their educations.

Consistent with Federal Rule of Appellate Procedure 29(a)(4)(E), *Amici*'s counsel authored this brief, no party's counsel authored the brief in whole or in part, and no party beyond *Amici* contributed any money toward the brief.

## INTRODUCTION

Since 1975, the federal agencies that Congress tasked with enforcing Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, have promulgated regulations protecting pregnant and postpartum students' educations. *See, e.g.*, 34 C.F.R. § 106.40(b) (2000); 45 C.F.R. § 86.40(b) (1975). Nonetheless, these students continue to face discrimination. Some schools, for example, deny pregnant students basic

accommodations that ensure they can pursue their studies without risking their and their pregnancies' health, evict them from university housing, or exclude them from classes postpartum.

Among other provisions, the U.S. Department of Education's broad-ranging new Title IX regulations ("the Rule") clarify and strengthen protections for pregnant and postpartum students. *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474, 33,887–88 (Apr. 29, 2024) (to be codified at 34 C.F.R. § 106.40). For example, the Rule:

- Requires schools to offer pregnant and postpartum students "reasonable modifications," such as larger desks, permission to use the restroom, and excused absences for prenatal care, *id.* at 33,887 (to be codified at 34 C.F.R. § 106.40(b)(3)(ii));
- Requires schools to provide lactation spaces and breaks to express milk, *id.* at 33,887–88 (to be codified at 34 C.F.R. §§ 106.40(b)(3)(ii), (v)); and
- Requires schools to notify pregnant students of their rights to modifications, leaves of absence, lactation space, and more, *id.* at 33,887 (to be codified at 34 C.F.R. §§ 106.40(b)(2), (b)(3)(i)).

Plaintiffs-Appellees did not challenge the portions of the Rule related to pregnancy and parenthood, did not claim to be injured by them, and made no arguments about them. Despite that, the District Court enjoined the full Rule, including those provisions. This Court should grant the

government's motion for a partial stay of the injunction pending appeal so those portions of the Rule unchallenged by the states may go into effect in time for the upcoming academic year.

## ARGUMENT

### I. The Rule is essential to ensure that pregnant and postpartum students can access education.

The Rule's pregnancy provisions are essential to ensure pregnant and postpartum students can learn and thrive at school. By requiring reasonable accommodations (or "modifications") during pregnancy, and reinstatement following a leave of absence to give birth, the Rule helps students maintain continuous access to their educations. It benefits not only pregnant and postpartum students but also their children, communities, and the economy.

1. The Rule will protect pregnant and postpartum students, whose educations are too often disrupted or derailed when schools deny them the reasonable accommodations they need to learn. For example, Student A. experienced a life-threatening miscarriage, during which she missed an examination at her post-secondary institution. Rather than permit her to reschedule the exam as a reasonable accommodation, her school assigned her a failing grade.[1]

---

[1] *Amici*'s expertise in this area comes directly from experiences of their and their partners' clients. *Amici* share all the stories referenced in this brief through sequentially-lettered pseudonym initials with the permission of the referenced clients.

Student B. requested pregnancy accommodations for months but received no substantive response from school administrators. Because pregnancy is an inherently time-limited condition, month-long delays in providing accommodations are tantamount to accommodation denials. *See Pfeifer v. Commonwealth of Pa. Bd. of Probation & Parole*, __ F.4th __, No. 21-1081 (3d Cir. July 3, 2024). Indeed, Student B. eventually gave up seeking the accommodations she needed and left school, incurring a bill for "withdrawing."

The Rule would protect pregnant students' ability to stay in school by entitling them to reasonable accommodations. 89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. § 106.40(b)(3)(ii)(A)). In *Amici*'s experience, even modest accommodations, like a larger uniform or desk or rescheduling paper deadlines falling the week after a student gives birth, ensure that pregnancy does not imperil a student's education.

2. Schools often fail to reinstate students who require a leave of absence to recover from serious pregnancy complications, childbirth, or postpartum depression to their prior academic status. Current regulations prohibit that practice, but in *Amici*'s experience, few students know their rights, so many are vulnerable to mistreatment. The Rule directly addresses this problem by requiring schools to give pregnant students affirmative notice of their rights under the law, helping ensure that pregnant and postpartum students can benefit in practice from their

rights under the law. *See id.* at 33,887 (to be codified at 34 C.F.R. §§ 106.40(b)(2), (b)(3)(i)).

Absent the Rule, pregnant and postpartum students who do not know they have rights to be reinstated to their prior academic status often end up pushed out of school entirely. For example, during her pregnancy, Student C. requested to attend her college classes remotely after her doctor placed her on bedrest. Rather than offering her modifications or placing her on medically necessary leave, Student C.'s school told her that her only option was to withdraw from the college, and that there was no guarantee that she would be readmitted once she was ready to return after giving birth.

By requiring schools to inform pregnant and postpartum students of their right to reinstatement following leave, the Rule safeguards students from misinformation about their rights.

3. The Rule would not only ensure educational access for individual students but also reduce costs to families, the public fisc, and economy. Currently, only about half of teenage mothers earn a high school diploma by age twenty-two, compared to 90% of girls who do not have a child as a teen. Cynthia Costello, Inst. for Women's Pol'y Rsch., *Pathways to Postsecondary Education for Pregnant and Parenting Teens*, at v (May 2014), https://files.eric.ed.gov/fulltext/ED556724.pdf. Only 2% of teen mothers seventeen and younger graduate college by age thirty. *Id.*

The lifetime cost to taxpayers when a student is pushed out of high school exceeds $292,000. Andrew Sum et al., *The Consequences of Dropping Out of High School* 15 (Oct. 2009), https://repository.library.northeastern.edu/downloads/neu:376324. By contrast, single mothers who complete their bachelor's degree each save the state over $40,000 each in public assistance. Lindsey Rechlin Cruse et al., Inst. for Women's Pol'y Research, *Investing in Single Mothers' Higher Education* 15 (Dec. 2019), https://iwpr.org/wp-content/uploads/2020/07/R600_Investing-in-Single-Moms-National.pdf.

## II. The Rule protects the health of students and their pregnancies.

The Rule's pregnancy provisions are also essential to safeguard the health of pregnant and postpartum students—and their pregnancies. First, short-term excused absences and other reasonable accommodations allow pregnant students to access critical medical care, such as pre- and post-natal appointments, and avoid risks to their health. Second, leaves of absence give pregnant students the time they need to recover from childbirth without sacrificing their educational goals. And third, access to lactation space allows students to express milk, with benefits for their and their baby's health.

1. Under the prior Title IX rules, schools often refused pregnant students the accommodations they needed, with serious consequences for their health. Student D. was diagnosed with a high risk of life-

threatening hemorrhage and requested a parking spot so she could drive to medical care if specific warning symptoms emerged. Her school refused. Student E. requested information about what chemicals she would be exposed to in a chemistry lab, since certain chemicals could pose a risk to her pregnancy. Her professor refused to provide the requested information, or to make any changes to limit exposure, forcing Student E. to choose between her education and the health of her pregnancy.

Without the protection of the Rule, pregnant students have struggled to receive even basic permissions to eat or drink during class—essential to retain a healthy amount of amniotic fluid—or for restroom breaks necessary to reduce urinary tract infections and the associated risk of preeclampsia and preterm birth. Louisville Dep't of Pub. Health and Wellness, *Pregnant Workers Health Impact Assessment* 21 (2019), https://louisvilleky.gov/center-health-equity/document/pregnant-workers-hia-final-02182019pdf. For example, Student F. was told by her professor that it "wouldn't be fair to the other students in class" to let her take additional bathroom breaks, a common excuse heard by the pregnant students *Amici* serve. The Rule, which expressly requires schools to make accommodations regardless of whether they accommodate other students, would have ensured these students received what they needed to protect their health and their pregnancies. 89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. § 106.40(b)(3)(ii)(A)).

The Rule also has a unique impact for higher education students: These students often reside in university housing, so when their schools force them out of school—either by failing to support them, or by expelling them for the mere fact of their pregnancy—they also lose their home. Homelessness during pregnancy can cause, or exacerbate, health complications for both parent and child. *See Effects of Homelessness on Families and Children*, Inst. for Children, Poverty & Homelessness 111 (Sept. 2015), https://www.icphusa.org/wp-content/uploads/2015/09/Effects-of-Homelessness.pdf. By requiring modifications to ensure pregnant students can complete their educations and maintain their housing, the Rule will have significant health benefits for both pregnant students and their children.

2. The Rule also addresses students' most common pregnancy-related need: time off for healthcare appointments and to recover from childbirth or pregnancy-related conditions.

*a. Intermittent Absences for Appointments.* Prenatal care vastly improves health outcomes. *See Ensuring Healthy Births Through Prenatal Support*, Ctr. Am. Progress (Jan. 31, 2020), https://www.americanprogress.org/article/ensuring-healthy-births-prenatal-support/. But nearly one in ten pregnant patients struggle to access vital first-trimester prenatal care because they cannot get time off of work or school. Rebecca A. Krukowski et al., *Correlates of Early Prenatal Care Access Among U.S. Women: Data from the Pregnancy Risk*

*Assessment Monitoring System (PRAMS)*, 26 Maternal and Child Health J. 328, 337 (2022). The Rule supports access to this care by ensuring that students who need short periods of intermittent time off for healthcare appointments can access it as a reasonable modification or access other accommodations to allow them to continue their studies while receiving care. 89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. § 106.40(b)(3)(ii)).

*b. Leaves of Absence.* Leave to recover from childbirth—which takes at least six to eight weeks—is associated with lower rates of infant and child mortality, as well as improved maternal health outcomes. *Postpartum*, Cleveland Clinic (Feb. 27, 2024), https://my.clevelandclinic.org/health/articles/postpartum; *Paid Parental Leave, Statement of Policy*, Am. Coll. of Obstetricians and Gynecologists (July 2016), https://www.acog.org/clinical-information/policy-and-positionstatements/statements-of-policy/2020/paid-parental-leave. Title IX regulations have long included a provision to offer leave for as long as medically necessary for postpartum students. 45 C.F.R. § 86.40(b)(5). In practice, however, students have struggled to access time off because of a lack of awareness of their right to it—and of their right to full reinstatement upon their return. The Rule, for the first time, requires schools to clearly inform students of their rights to leaves of absence and to reinstatement as reasonable modifications for their pregnancies. 89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. §§ 106.40(b)(2), (3)(i)).

This change will make a critical difference for many students. For example, when Student G. asked her school about time off to recover from childbirth, she was incorrectly informed that Title IX only covered pregnancy and that postpartum leave was only available if she had a disabling complication. Student H.'s school refused to discuss a plan for childbirth recovery while she was pregnant, and days after she gave birth, the school told her she had to return for exams. As a result, Student H. was not allowed to take the time off that her doctor recommended after a complicated pregnancy and birth.

Student I. wanted just two weeks off to deliver and recover from childbirth, but her college informed her that taking that time was against policy, and that if she missed as little as two days she could fail her classes. So Student I.—like some other pregnant students—induced labor to avoid missing class. Induction without medical indication can increase the risk of complications including hemorrhage, cesarean birth, fetal stress, and negative impacts on future pregnancies. *Choosing Wisely Recommendation #307*, Am. Acad. of Fam. Physicians, https://perma.cc/N7XF-EADQ.

The Rule mitigates the risks of these harms by clearly requiring schools to provide time off for recovery, to inform pregnant and postpartum students of their right to time off for as long as medically necessary, and to regularly train staff on the Title IX requirements. Fed.

Reg. at 33,885, 33,887 (to be codified at 34 C.F.R. §§ 106.8(d); 106.40(b)(2), 106.40 (b)(3)(i)).

3. The Rule also improves students' and their babies' health by enabling students who wish to nurse or express milk to do so. Major medical organizations in the United States unanimously recommend breastfeeding, given the well-established health benefits for both parent and child. *See Recommendation and Benefits*, Ctrs. for Disease Control and Prevention (Mar. 17, 2023), https://perma.cc/TK62-Q82Q. To ensure they will be able to produce enough milk to feed their child, lactating parents must express milk from the body regularly and need breaks throughout the day to do so. Dep't of Health & Hum. Res., *The Business Case for Breastfeeding* 5 (2008), https://owh-wh-d9-dev.s3.amazonaws.com/s3fs-public/documents/bcfb_easy-steps-to-supporting-breastfeeding-employees.pdf. If they do not pump or nurse their child regularly, lactating students can quickly lose their milk supply and experience complications, including infection. *Id.* So, for student parents to nurse or express milk, their schools must provide an appropriate space and sufficient time to do so.

In *Amici*'s experience, without the Rule, schools often decline to provide students effective lactation accommodations, if any, and so force students to choose between their education and providing milk for their baby. For example, Student J. developed mastitis due to her inability to express milk in the extremely limited time between her law school classes

in the weeks following her child's birth. And when blocked from lactation accommodations, some students stop breastfeeding, while others simply drop out. When Student K.'s school declined to allow her to pump at school, she dropped out.

The Rule ensures that lactating students can regularly express milk and avoid the harmful health complications that arise when they cannot, all while continuing their education. The Rule requires educational institutions to provide a clean, private, non-bathroom lactation space, as well as reasonable breaks to express milk or nurse. 89 Fed. Reg. at 33,887–88 (to be codified at 34 C.F.R. §§ 106.40(b)(3)(ii), (v)). Moreover, the Rule's new notification requirements ensure that lactating students will have access to these important accommodations in practice. *See id.* at 33,887 (to be codified at 34 C.F.R. §§ 106.40(b)(2), (b)(3)(i)).

## CONCLUSION

Portions of the regulation not at issue in the Plaintiffs-Appellees' suit provide vital protections for pregnant and postpartum students, and the District Court enjoined them erroneously. This Court should grant Defendants-Appellants' motion for a partial stay.

Respectfully submitted,

                <u>/s/ Jim Davy</u>

                Jim Davy
                ALL RISE TRIAL & APPELLATE
                P.O. Box 15216
                Philadelphia, PA 19125
                (215) 792-3579
                jimdavy@allriselaw.org

            Counsel for *Amici Curiae*

July 9, 2024

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief:

(i) complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 29 because it contains 2,546 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 16.66.1, set in Century Schoolbook 14-point type.

/s/ Jim Davy
Jim Davy

**CERTIFICATE OF SERVICE**

I certify that on July 9, 2024, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

<u>/s/ Jim Davy</u>
Jim Davy