No. 24-5588

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————

STATE OF TENNESSEE, et al.,

Plaintiffs-Appellees,

CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL;
A.C., by her next friend and mother Next Friend, Abigail Cross,

Intervenors-Plaintiffs-Appellees,

v.

MIGUEL CARDONA, in his official capacity as Secretary of Education, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Eastern District of Kentucky

———————————

BRIEF FOR APPELLANTS

———————————

*Of Counsel:*

LISA BROWN
*General Counsel*
*U.S. Department of Education*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

MELISSA N. PATTERSON
STEPHANIE R. MARCUS
JACK STARCHER
DAVID L. PETERS
STEVEN A. MYERS
*Attorneys, Appellate Staff*
*Civil Division, Room 7232*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................1

STATEMENT OF JURISDICTION ......................................................3

STATEMENT OF THE ISSUE ............................................................4

STATEMENT OF THE CASE .............................................................4

    A.    Title IX and the Final Rule...............................................4

    B.    Prior Proceedings.............................................................7

        1.    District Court Proceedings ...................................7

        2.    Appellate and Supreme Court Proceedings ....................................10

SUMMARY OF ARGUMENT............................................................ 11

STANDARD OF REVIEW ................................................................ 17

ARGUMENT ..................................................................................... 18

I.    Gender-Identity Discrimination Is Necessarily a Form of Discrimination on the Basis of Sex. ................................................ 18

II.    The Rule's Treatment of Sex-Separate Spaces and Pronouns Comports with Title IX and the Constitution. ........................................ 25

    A.    Section 106.31(a)(2)'s De Minimis Harm Standard Effectuates Title IX's Text. .........................................................25

    B.    The Rule's Prohibition on Hostile-Environment Harassment Raises No First Amendment Concerns.........................................33

    C.    The Rule Protects Parental Rights. ...............................................43

III.    The Remaining Factors Weigh Against Preliminary Injunctive Relief.............. 44

    A.    Plaintiffs Failed to Establish Irreparable Harm. .........................................44

      B.     The Equities and Public Interest Weigh Against an Injunction. ..............49

IV.    At a Minimum, the Injunction Is Overbroad........................................................ 49

CONCLUSION ............................................................................................................... 53

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville*,
   75 F.4th 760 (7th Cir. 2023) ................................................................ 20, 27

*Adams ex. rel. Kasper v. School Bd. of St. Johns Cty.*,
   57 F.4th 791 (11th Cir. 2022) ............................................................. 28, 29

*Alabama v. Cardona*,
   --- F. Supp. 3d ----, 2024 WL 3607492 (N.D. Ala. July 30, 2024),
   *mot. for inj. pending appeal pending*, No. 24-12444 (11th Cir.) ........................................... 8

*Arkansas v. U.S. Dep't of Educ.*,
   No. 24-636, 2024 WL 3518588 (E.D. Mo. July 24, 2024) ........................................... 8

*Arnold, Constable & Co. v. United States*,
   147 U.S. 494 (1893) .............................................................................. 23

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ........................... 2, 5, 6, 11, 12, 18, 19, 20, 21, 22, 23, 25, 28, 50

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) .............................................................................. 49

*Cannon v. University of Chi.*,
   441 U.S. 677 (1979) .............................................................................. 49

*Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*,
   --- F. Supp. 3d ----, 2024 WL 3381901 (N.D. Tex. July 11, 2024) .............................. 8

*Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*,
   947 F.3d 342 (6th Cir. 2020) .................................................................. 22

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .............................................................................. 46

*D.T. v. Sumner Cty. Sch.*,
   942 F.3d 324 (6th Cir. 2019) ............................................................. 45, 47

*Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999) .............................................................................. 34

*Doe v. Miami Univ.*,
   882 F.3d 579 (6th Cir. 2018) ...................................................... 34, 35, 38, 40

*EEOC v. Kimberly-Clark Corp.*,
   511 F.2d 1352 (6th Cir. 1975) ..........................................................49

*Entertainment Prods., Inc. v. Shelby Cty.*,
   588 F.3d 372 (6th Cir. 2009) ...................................................... 39, 40

*Fischer v. Thomas*,
   78 F.4th 864 (6th Cir. 2023) ............................................................ 48

*Gill v. Whitford*,
   585 U.S. 48 (2018) ......................................................................... 17

*Grabowski v. Arizona Bd. of Regents*,
   69 F.4th 1110 (9th Cir. 2023) ......................................................... 20

*Grimm v. Gloucester Cty. Sch. Bd.*,
   972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020) ..................... 20, 27

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009) ....................................................................... 22

*Haaland v. Brackeen*,
   599 U.S. 255 (2023) .......................................................... 17, 43, 47

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993) ............................................ 34, 35, 36, 40, 42

*Jackson v. Birmingham Bd. of Educ.*,
   544 U.S. 167 (2005) .............................................. 1, 2, 4, 24, 33

*Kansas v. U.S. Dep't of Educ.*,
   --- F. Supp. 3d ----, 2024 WL 3273285 (D. Kan. July 2, 2024),
   *mot. for stay pending appeal pending*, No. 24-3097 (10th Cir.) ..............8

*Kentucky v. Biden*,
   57 F.4th 545 (6th Cir. 2023) ...................................................... 44-45

*Kollaritsch v. Michigan State Univ. Bd. of Trs.*,
   944 F.3d 613 (6th Cir. 2019) ..................................... 19-20, 20, 22

*Kutchinski ex rel. H.K. v. Freeland Cmty. Sch. Dist.*,
   69 F.4th 350 (6th Cir. 2023) ........................................................... 41

*L.W. ex rel. Williams v. Skrmetti*,
   83 F.4th 460 (6th Cir. 2023) ........................................................... 23

*Louisiana v. U.S. Dep't of Educ.*,
  --- F. Supp. 3d ----, 2024 WL 2978786 (W.D. La. June 13, 2024),
  *stay denied*, No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024) .........................8

*Maryland v. King*,
  567 U.S. 1301 (2012) ..................................................................................... 48-49

*Members of the City Council of the City of L.A. v. Taxpayers for Vincent*,
  466 U.S. 789 (1984) ........................................................................................... 41

*Memphis A. Philip Randolph Inst. v. Hargett*,
  978 F.3d 378 (6th Cir. 2020) ............................................................................. 44

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021) ............................................................... 23, 38, 40

*Michigan Coal. of Radioactive Material Users v. Griepentrog*,
  945 F.2d 150 (6th Cir. 1991) ............................................................................. 48

*Muldrow v. City of St. Louis*,
  144 S. Ct. 967 (2024) ......................................................................................... 25

*New York v. U.S. Dep't of Educ.*,
  477 F. Supp. 3d 279 (S.D.N.Y. 2020) ...................................................... 45, 46

*Oklahoma v. Cardona*,
  No. 24-461, 2024 WL 3609109 (W.D. Okla. July 31, 2024) ........................ 8

*Online Merchs. Guild v. Cameron*,
  995 F.3d 540 (6th Cir. 2021) ............................................................................. 17

*Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*,
  --- F.4th ----, 2024 WL 3565635 (6th Cir. July 29, 2024) .............................. 36, 37, 40

*Pelcha v. MW Bancorp, Inc.*,
  988 F.3d 318 (6th Cir. 2021) ............................................................................. 23

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) ............................................................................................... 47

*Pennsylvania v. DeVos*,
  480 F. Supp. 3d 47 (D.D.C. 2020) .................................................................... 45

*Rowles v. Curators of the Univ. of Mo.*,
  983 F.3d 345 (8th Cir. 2020) .................................................................... 40, 41

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) ................................................................ 36

*Tennessee v. Department of Educ.*,
    104 F.4th 577 (4th Cir. 2024) .................................... 46, 47

*Texas v. United States*,
    No. 24-86, 2024 WL 3405342 (N.D. Tex. July 11, 2024) ............ 8

*Union Home Mortg. Corp. v. Cromer*,
    31 F.4th 356 (6th Cir. 2022) ...................................... 49

*Waldo v. Consumers Energy Co.*,
    726 F.3d 802 (6th Cir. 2013) ...................................... 40

*Wallace v. FedEx Corp.*,
    764 F.3d 571 (6th Cir. 2014) ...................................... 24

*Watson v. Solis*,
    693 F.3d 620 (6th Cir. 2012) ...................................... 29

*Winter v. Natural Res. Def. Council*,
    555 U.S. 7 (2008) .............................................. 44, 49

**Statutes:**

Education Amendments of 1974,
    Pub. L. No. 93-380, tit. VII, pt. D § 844, 88 Stat. 484, 612 ...................26

5 U.S.C. § 553 .................................................................... 3

5 U.S.C. §§ 701-706 ............................................................. 3

20 U.S.C. § 1234g(a) ............................................................ 5

20 U.S.C. § 1681 ............................................................ 18, 29

20 U.S.C. § 1681(a) ............................................. 4, 19, 21, 25, 52

20 U.S.C. § 1681(a)(6) ......................................................... 7

20 U.S.C. § 1681(a)(6)(A) ..................................................... 26

20 U.S.C. § 1681(a)(6)(B) ..................................................... 26

20 U.S.C. § 1682 ........................................................................................ 4, 46

20 U.S.C. §§ 1682-1683 ................................................................................. 5

20 U.S.C. § 1686 ................................................................... 4, 7, 26, 29

28 U.S.C. § 1292(a)(1) ................................................................................... 3

28 U.S.C. § 1331 ........................................................................................... 3

28 U.S.C. § 1346 ........................................................................................... 3

28 U.S.C. § 1361 ........................................................................................... 3

42 U.S.C. § 2000e-2 ...................................................................................... 5

42 U.S.C. § 2000e-2(a)(1) ........................................................................... 19

42 U.S.C. § 2000e-2(e) ............................................................................... 23

**Regulatory Materials:**

34 C.F.R. § 100.7(a)-(d) ............................................................................... 5

34 C.F.R. § 100.8(a) ..................................................................................... 5

34 C.F.R. § 100.8(a)(1) ............................................................................... 46

34 C.F.R. § 105.57(e)(2) ............................................................................... 5

34 C.F.R. § 106.2 ........................................................... 7, 10, 33, 35, 50

34 C.F.R. § 106.6(d) ................................................................................... 35

34 C.F.R. § 106.6(g) ................................................................................... 43

34 C.F.R. § 106.8(a) ..................................................................................... 5

34 C.F.R. § 106.8(a) (2020) ....................................................................... 51

34 C.F.R. § 106.8(c) ..................................................................................... 5

34 C.F.R. § 106.8(c) (2020) ....................................................................... 51

34 C.F.R. § 106.8(d) (2020) ....................................................................... 51

34 C.F.R. § 106.8(f) ............................................................................. 5

34 C.F.R. § 106.10 ..................................................................... 6, 18, 50

34 C.F.R. § 106.16 ..................................................................... 6, 18, 50

34 C.F.R. § 106.30(a)(2) (2020) ............................................................ 33

34 C.F.R. § 106.31(a)(2) ............................................... 6, 7, 10, 27, 50

34 C.F.R. § 106.33 ............................................................................ 27, 29

34 C.F.R. § 106.40(b)(3)(v) ................................................................. 5

34 C.F.R. § 106.44 ............................................................................... 5

34 C.F.R. §§ 106.45-106.46 ................................................................ 6

34 C.F.R. § 106.48 ............................................................................. 52

34 C.F.R. § 106.71(a) (2020) ............................................................ 51

45 C.F.R. § 86.1 (1975) ..................................................................... 51

45 C.F.R. § 86.3(a)-(b) (1975) ........................................................... 51

45 C.F.R. § 86.4 (1975) ..................................................................... 51

45 C.F.R. § 86.6(a) (1975) ................................................................. 51

45 C.F.R. § 86.9(a) (1975) ................................................................. 51

45 C.F.R. § 86.9(c) (1975) ................................................................. 51

45 C.F.R. § 86.36(a)-(c) (1975) ......................................................... 51

45 C.F.R. § 86.37(a)(2) (1975) ........................................................... 51

45 C.F.R. § 86.37(b) (1975) ............................................................... 51

45 C.F.R. § 86.38(a) (1975) ............................................................... 51

45 C.F.R. § 86.39 (1975) ................................................................... 51

45 C.F.R. § 86.51(a)(4) (1975) ........................................................... 51

45 C.F.R. § 86.53 (1975) ................................................................................ 51

45 C.F.R. § 86.56(b) (1975) .......................................................................... 51

45 C.F.R. § 86.59 (1975) ................................................................................ 51

Exec. Order No. 14,021, § 2(a),
   86 Fed. Reg. 13,803, 13803 (Mar. 8, 2021) ........................................... 5

*Nondiscrimination on the Basis of Sex in Education Programs or*
   *Activities Receiving Federal Financial Assistance,*
   85 Fed. Reg. 30,026 (May 19, 2020) ............................................... 5, 45

*Nondiscrimination on the Basis of Sex in Education Programs or*
   *Activities Receiving Federal Financial Assistance,*
   89 Fed. Reg. 33,474 (Apr. 29, 2024) ...................... 1, 6, 7, 18, 20, 21, 25, 26, 27, 28,
                                                                29, 30, 31, 32, 33, 34, 35, 36,
                                                                37, 38, 39, 41, 42, 43, 44, 52

*Revised Sexual Harassment Guidance: Harassment of Students by*
   *School Employees, Other Students, or Third Parties,*
   66 Fed. Reg. 5512 (Jan. 19, 2001) ...................................................... 33

## STATEMENT REGARDING ORAL ARGUMENT

The federal government respectfully requests oral argument. The district court preliminarily enjoined the Department from enforcing, in six states, a regulation implementing Title IX's prohibition on discrimination on the basis of sex in education programs or activities receiving federal financial assistance. Oral argument would facilitate the Court's consideration of the case.

# INTRODUCTION

Title IX prohibits sex discrimination in federally funded education programs and activities.  As the Supreme Court has made clear, "Congress gave the statute a broad reach" to cover a "wide range of intentional unequal treatment."  *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005).  Congress also authorized the Department of Education to issue rules to effectuate the statute's sweeping prohibition on sex-based discrimination.

In April 2024, the Department exercised that authority by issuing a rule that makes a variety of amendments to its Title IX regulations.  *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (Rule).  The Rule does many things, ranging from revising recordkeeping requirements to guaranteeing access to lactation spaces for breastfeeding students.  But plaintiffs have challenged only three provisions of the Rule—and in particular, how those provisions apply to discrimination on the basis of gender identity.

The first such provision (§ 106.10) clarifies that discrimination on the basis of gender identity is necessarily a form of discrimination on the basis of sex.  The second (§ 106.31(a)(2)) provides that a school violates Title IX when it differentiates on the basis of sex in a way that causes a person more than de minimis harm that Congress has not permitted; as relevant here, it means that individuals must be permitted to use restrooms and locker rooms consistent with their gender identity.  And the third (the

definition of hostile-environment harassment in § 106.2) recognizes that unwelcome sex-based conduct that is "subjectively and objectively offensive" and "so severe or pervasive that it limits or denies" a person's ability to participate in or benefit from an educational program constitutes hostile-environment harassment.  All three provisions effectuate Title IX's "broad" prohibition on sex discrimination, *Jackson*, 544 U.S. at 175, and all three are consistent with precedent of this Court and the Supreme Court.

Plaintiffs' challenges to these provisions are meritless.  Section 106.10 flows directly from the reasoning of the Supreme Court's decision in *Bostock v. Clayton County*, which recognizes that it is "impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex."  590 U.S. 644, 660 (2020).  Section 106.31(a)(2) likewise follows directly from the statutory text, providing that it violates the statute's nondiscrimination mandate to treat a person differently on the basis of sex when (a) the statute does not otherwise permit such disparate treatment, and (b) the differential treatment causes more than de minimis harm.  And § 106.2's definition of hostile-environment harassment not only requires recipients to address conduct that denies students the right to an education free from sex discrimination, but also is consistent with the standards that courts—including this one—have long applied in both the Title IX and Title VII contexts.

The district court nevertheless entered a sweeping preliminary injunction barring the Department from enforcing the entirety of the Rule in Tennessee, Kentucky, Ohio, Indiana, Virginia, and West Virginia. In so doing, it wrongly characterized the Department as seeking to redefine sex as gender identity and refused to apply *Bostock*'s central teaching—discrimination on the basis of gender identity is necessarily discrimination on the basis of sex—to the materially indistinguishable language of Title IX. Beyond that, it erroneously found that the ordinary costs associated with implementing the Rule amounted to irreparable harm sufficient to warrant preliminary relief. And if that were not enough, it failed to justify an injunction against the entirety of the Rule when plaintiffs challenged only three provisions.

This Court should vacate the preliminary injunction.

## STATEMENT OF JURISDICTION

Plaintiffs and plaintiff-intervenors asserted jurisdiction under 28 U.S.C. §§ 1331, 1346, and 1361, as well as 5 U.S.C. §§ 553 and 701-706. Compl., RE1, PageID #11-12; Intervenors' Compl., RE72, PageID #1489. The district court entered a preliminary injunction on June 17, 2024. *See* Op., RE100, PageID #1996-2088. Defendants timely appealed on June 24, 2024. Notice of Appeal, RE103, PageID #2093-95. This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

In April 2024, the Department of Education issued a rule making numerous changes to its regulations implementing Title IX of the Education Amendments of 1972. After finding that plaintiffs were likely to succeed on challenges to three of the new or changed provisions, the district court preliminarily enjoined the Department from enforcing the entire Rule within six states.

The question presented is whether the district court erred in entering a preliminary injunction barring the Department from enforcing the Rule, in its entirety, within those six states.

## STATEMENT OF THE CASE

### A.    Title IX and the Final Rule

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Congress gave the statute['s]" prohibition on sex discrimination "a broad reach" subject only to a "list of narrow" statutory exceptions and exclusions. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 175 (2005); *see* 20 U.S.C. §§ 1681(a), 1686. Congress also authorized the Department to "issu[e] rules, regulations, or orders of general applicability … consistent with achievement of the objectives of the statute." 20 U.S.C. § 1682. And Congress established a detailed administrative scheme requiring the Department to first attempt to secure compliance

4

through voluntary means before the Department may suspend or terminate federal financial assistance.  *See id.* §§ 1234g(a), 1682-1683; *see also* 34 C.F.R. §§ 100.7(a)-(d), 100.8(a).

Since Title IX's enactment, the Department has promulgated regulations implementing the statute's prohibition on sex discrimination, including in 2020.  *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) (2020 Regulation).  One month after publication of the 2020 rule, the Supreme Court held that the prohibition on discrimination "because of … sex" in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), necessarily encompasses discrimination because of sexual orientation and gender identity.  *See Bostock v. Clayton County*, 590 U.S. 644, 660 (2020).  Following *Bostock*, the President directed the Department to review the 2020 regulation and existing guidance "for consistency with governing law."  Exec. Order No. 14,021, § 2(a), 86 Fed. Reg. 13,803, 13803 (Mar. 8, 2021).

Following an extensive public engagement process, the Department issued the Rule.  Among other things, the Rule streamlines requirements related to Title IX Coordinators, 34 C.F.R. § 106.8(a); revises recipients' notice of nondiscrimination and record-keeping requirements, *id.* § 106.8(c), (f)); ensures access to lactation spaces for breastfeeding students and employees, *id.* §§ 106.40(b)(3)(v), 105.57(e)(2); addresses a recipient's response to sex discrimination, *id.* § 106.44; and provides recipients

additional flexibility regarding procedures to respond to claims of sex discrimination, including sex-based harassment, *id.* §§ 106.45-106.46.

Plaintiffs' challenges concern three other provisions of the Rule, and particularly those provisions' application to discrimination on the basis of gender identity. Section 106.10 describes the scope of prohibited sex discrimination under Title IX. It provides that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 34 C.F.R. § 106.10. As the Department explained, "discrimination on each of those bases is sex discrimination because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female.'" 89 Fed. Reg. at 33,802 (quoting *Bostock*, 590 U.S. at 655).

Separately, § 106.31(a)(2) details when separation or differentiation on the basis of sex constitutes prohibited sex discrimination. It sets out the general principle that Title IX permits "different treatment or separation on the basis of sex" only to the extent that such differential treatment or separation does not "discriminate[] … by subjecting a person to more than de minimis harm." 34 C.F.R. § 106.31(a)(2). The final sentence of § 106.31(a)(2) provides that a policy or practice that "prevents a person from participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex." *Id.* This provision also recognizes, however, that Congress carved out

6

certain contexts in which a school may permissibly differentiate on the basis of sex even though greater than de minimis harm may result.  *Id.*; *see, e.g.*, 20 U.S.C. § 1681(a)(6) (membership in fraternities or sororities); *id.* § 1686 (sex-separate living facilities).  The Rule does not alter the existing athletics regulation, which is the subject of a separate rulemaking.  *See* 89 Fed. Reg. at 33,817.

Finally, § 106.2 defines many terms, including "sex-based harassment."  One form of such harassment is "[h]ostile environment harassment," defined as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (*i.e.*, creates a hostile environment)."  34 C.F.R. § 106.2.  Section 106.2 explains that "[w]hether a hostile environment has been created is a fact-specific inquiry that includes consideration" of several enumerated factors.  *Id.*

### B.    Prior Proceedings

#### 1.    District Court Proceedings

Plaintiffs are Tennessee, Kentucky, Ohio, Indiana, Virginia, and West Virginia, as well as an association representing religious educators and a high-school student from West Virginia, both of which intervened.  Compl., RE1, PageID #9-11; Intervenors' Compl., RE72, PageID #1490.  Plaintiffs challenge the Rule's treatment of gender identity, claiming that the application of certain provisions to contexts such

as restrooms and pronouns will cause them irreparable harm.  *See* States' Mot., RE19-1, PageID #859-61; Intervenors' Mot., RE63-1, PageID #1397-99.[1]

The district court preliminarily enjoined the Department from enforcing the entire Rule within the plaintiff states.  Op., RE100, PageID #2088.  The court held that § 106.10's inclusion of gender-identity discrimination in the scope of prohibited sex discrimination was contrary to Title IX, reasoning the Rule "would turn Title IX on its head by redefining 'sex' to include 'gender identity.'"  *Id.*, PageID #2011-23, 2086.  The court rejected the Department's reliance on *Bostock*, believing that the Supreme Court's "holding was limited to the narrow issue of" "hiring and firing in employment."  *Id.*, PageID #2017, 2019 (quotation marks omitted).  For much the same reason, the court concluded that the Rule's reliance on "*Bostock*'s reasoning" was arbitrary because the "text, structure, purpose, and history" of Titles VII and IX "vary

---

[1] Numerous other challenges are pending in cases around the country.  *See Alabama v. Cardona*, --- F. Supp. 3d ----, 2024 WL 3607492 (N.D. Ala. July 30, 2024) (denying preliminary injunction), *mot. for inj. pending appeal pending*, No. 24-12444 (11th Cir.); *Louisiana v. U.S. Dep't of Educ.*, --- F. Supp. 3d ----, 2024 WL 2978786 (W.D. La. June 13, 2024) (granting preliminary injunction), *stay denied*, No. 24-30399, 2024 WL 3452887 (5th Cir. July 17, 2024); *Kansas v. U.S. Dep't of Educ.*, --- F. Supp. 3d ----, 2024 WL 3273285 (D. Kan. July 2, 2024) (granting preliminary injunction), *mot. for stay pending appeal pending*, No. 24-3097 (10th Cir.); *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, --- F. Supp. 3d ----, 2024 WL 3381901 (N.D. Tex. July 11, 2024) (granting preliminary injunction); *Texas v. United States*, No. 24-86, 2024 WL 3405342 (N.D. Tex. July 11, 2024) (granting preliminary injunction); *Arkansas v. U.S. Dep't of Educ.*, No. 24-636, 2024 WL 3518588 (E.D. Mo. July 24, 2024) (granting preliminary injunction); *Oklahoma v. Cardona*, No. 24-461, 2024 WL 3609109 (W.D. Okla. July 31, 2024) (granting preliminary injunction).

considerably." *Id.*, PageID #2063. And the court concluded that the major-questions doctrine and Spending Clause required clearer congressional authorization for the Rule. *Id.*, PageID #2023-27.

The court also concluded that § 106.31(a)(2)'s de minimis harm standard contravened Title IX and was arbitrary and capricious. Op., RE100, PageID #2020-23, 2065-72. The court questioned the Rule's application of that standard to certain contexts involving sex separation (*e.g.*, restrooms) but not others (*e.g.*, membership in fraternities). *Id.*, PageID #2065. The court further faulted the Department for not addressing "potential risks posed to student and faculty safety," *id.*, PageID #2067, from permitting individuals to access "intimate spaces like bathrooms and locker rooms" consistent with their gender identity, *id.*, PageID #2068. And the court opined that the Department "failed to account for the impact [of the Rule] on the constitutional right of parents to influence their children's education." *Id.*, PageID #2058.[2]

The court held that § 106.2's definition of hostile-environment harassment contravened the First Amendment. Op., RE100, PageID #2036-51. The court concluded that the Rule would "compel[] affirmation of gender identity" by requiring students and teachers to use "preferred rather than accurate pronouns" and "compel[] silence of opposing viewpoints." *Id.*, PageID #2037 (quotation marks omitted). The

---

[2] The court rejected plaintiffs' arguments concerning athletics, explaining that "the current regulations on athletics continue to apply." Op., RE100, PageID #2074.

court also concluded that the standard was "overbroad" and "vague." *Id.*, PageID #2046.

As to the remaining factors, the court concluded that the equities favored plaintiffs and that plaintiffs faced irreparable injuries in the form of compliance costs, threatened loss of federal funding, interference with the plaintiff states' sovereign interests, and harm to the plaintiff states' citizens. Op., RE100, PageID #2074-83. Despite the court's recognition that plaintiffs challenged only certain provisions of the Rule, *id.*, PageID #2085, the court did not limit the injunction to the challenged provisions or to the gender-identity-related applications of the Rule that the court deemed invalid. Instead, the court enjoined the Rule in its entirety within the six plaintiff states. *Id.*, PageID #2088.

## 2. Appellate and Supreme Court Proceedings

The Department filed an emergency motion seeking to partially stay the injunction. *See* Dkt. 19. The Department asked the Court to stay the injunction except as to the following 2024 Rule provisions: (i) 34 C.F.R. § 106.31(a)(2), and (ii) 34 C.F.R. § 106.2's definition of hostile-environment harassment as applied to discrimination on the basis of gender identity.

A motions panel denied the stay request. *See* Dkt. 41 (Stay Order). The panel concluded that "the district court likely concluded correctly that the Rule's definition of sex discrimination exceeds the Department's authority," *id.* at 4, as "Title VII's definition of sex discrimination under *Bostock* simply does not mean the same thing

for other anti-discrimination mandates," *id.* at 5.  It therefore concluded that "the preliminary injunction properly extends to three central provisions of the Rule: §§ 106.10, 106.2's definition of hostile environment harassment, and 106.31(a)."  *Id.* at 6.  The panel then concluded that these provisions "appear to touch every substantive provision of the Rule," as they all "implicate[] the new definition of sex discrimination."  *Id.*  The panel therefore declined to stay any portion of the injunction.  Judge Mathis dissented, explaining that he would "limit the injunction to the provisions Plaintiffs challenge."  *Id.* at 11 (Mathis, J., dissenting).

The Solicitor General filed an application asking the Supreme Court to partially stay the injunction pending appeal.  *See* Application for a Partial Stay of the Injunction Entered by the United States District Court for the Eastern District of Kentucky, *Cardona v. Tennessee*, No. 24A79 (U.S. July 22, 2024).  As of the date of this filing, that application remains pending.

## SUMMARY OF ARGUMENT

**I.**     The district court erred in holding that the Rule's provision addressing the scope of sex discrimination—§ 106.10—exceeds the Department's statutory authority by stating that gender-identity discrimination is a form of sex discrimination. That conclusion follows directly from the statute's plain text and from the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020), which interpreted materially identical language in Title VII and concluded that gender-identity discrimination necessarily involves sex discrimination.  That is so, as *Bostock* made clear, even assuming that

11

"sex" is understood to refer only to physiological or "biological distinctions between male and female." *Id.* at 655.

None of the district court's reasons for distinguishing *Bostock* withstand scrutiny. As this Court and others have recognized, Title VII and Title IX set out identical but-for causation standards, and this Court has consistently looked to Title VII case law to interpret Title IX. The texts of the two provisions demonstrate that they serve the same purpose of eradicating sex discrimination, and Title IX's various statutory exemptions do not suggest that Title IX's core prohibition against discrimination "on the basis of sex" can be read differently. The district court ran afoul of basic rules of statutory interpretation by relying on nebulous, atextual considerations like the court's sense of Title IX's history and purposes to conclude that "sex discrimination" carries different meanings in materially identical statutes.

For largely the same reasons, the district court was wrong to conclude that the Rule likely violates the Spending Clause and the major-questions doctrine. Both holdings turned on the district court's erroneous conclusion that the Rule rewrote Title IX's definition of sex discrimination. But as the Supreme Court made clear in *Bostock*, the conclusion that gender-identity discrimination is a form of sex discrimination flows clearly from the statutory text.

**II.** The district court likewise erred in holding that the remaining challenged Rule provisions—and, in particular, their application to certain contexts involving gender-identity discrimination—were likely unlawful.

**A.**    Section 106.31(a)(2) sets out the circumstances in which drawing sex-based distinctions constitutes prohibited discrimination.  Title IX does not prohibit all sex-based distinctions; rather, it bars only those distinctions that cause cognizable— *i.e.*, more than de minimis—harm.  At the same time, Congress identified certain contexts, such as fraternity membership and athletic teams, in which recipients may draw sex-based distinctions—even if they cause harm—notwithstanding Title IX's prohibition on sex discrimination.  Section 106.31(a)(2) thus effectuates Title IX's text and structure in providing that unless a congressionally recognized exception applies, a recipient may not separate or differentiate on the basis of sex in a manner that subjects a person to more than de minimis harm.

The Rule also details how § 106.31(a)(2)'s standard applies to gender-identity discrimination.  The Rule explains that preventing individuals from participating in sex-separate education programs or activities consistent with their gender identity subjects individuals to cognizable harm.  Recipients thus must permit individuals to participate in sex-separate programs or access sex-separate facilities consistent with their gender identity, unless those programs or facilities fall within a congressionally recognized exception.  In the context of restrooms, providing sex-separate facilities generally does not violate Title IX because a cisgender male suffers no sex-based harm from being excluded from a comparable women's restroom, and vice versa.  But because sex-separate restrooms are not exempt from Title IX's nondiscrimination mandate and denying individuals the ability to access such restrooms consistent with

their gender identity causes cognizable harm, preventing transgender students from accessing restrooms that align with their gender identity would violate Title IX, as various courts have found.

The district court concluded that treating sex separation in contexts like social fraternities differently than contexts like restrooms contravened Title IX and was arbitrary and capricious. Section 106.31(a)(2), however, reflects the deliberate choices that Congress itself drew. Congress exempted certain contexts from Title IX's general nondiscrimination mandate, without including any such exemption for sex-separate restrooms. Section 106.31(a)(2) neither conflicts with Title IX nor is unreasonable for carefully adhering to the statutory language that Congress actually enacted.

The district court was also wrong in concluding that the Department failed to adequately account for privacy, safety, and compliance concerns. The Rule explained that nothing prevents recipients from ensuring the privacy and safety of all students in sex-separate facilities, including by enforcing existing prohibitions on harassment and other forms of misconduct. The Rule further explained that nothing indicates that transgender students pose a particular risk to their cisgender peers or that the mere presence of a transgender person in a single-sex space compromises anyone's legitimate privacy interests. And the Rule explained that recipients may take reasonable measures to verify individuals' gender identity for purposes of compliance with § 106.31(a)(2).

**B.**     The district court also erred in holding that the Rule's definition of hostile-environment harassment contravenes the First Amendment.  The standard announced in § 106.2 closely tracks the Department's longstanding interpretation of Title IX as well as the standard applied for evaluating hostile-environment harassment under Title VII.  No court had previously found those standards in conflict with the First Amendment; to the contrary, various courts—including this one—have upheld those proscriptions on hostile-environment harassment without raising any First Amendment concerns.  And if any doubt remained, the Rule makes clear that no provision requires or authorizes a recipient to violate anyone's First Amendment rights.

The district court badly misapprehends the Rule's operation in suggesting that it compels speech regarding gender identity.  The hostile-environment standard neither compels any particular speech nor requires anyone to affirm any particular viewpoint.  It merely requires *schools* to address conduct that creates a hostile environment in their education programs, which is wholly different from telling students and faculty what they must say.  The Rule makes clear, moreover, that when addressing sex-based harassment, recipients must account for individuals' First Amendment rights, which may constrain the manner in which recipients respond to harassing speech.  In short, nothing in the Rule mandates that anyone use particular pronouns or compels silence of opposing viewpoints on questions of gender-identity discrimination.

Section 106.2's hostile-environment standard also is not overbroad or vague. The Rule defines the scope of prohibited harassment narrowly in terms of specific and required elements and in language with common usage in the antidiscrimination context. Even if the bar on offensive conduct occasionally sweeps in speech, any amount of prohibited protected speech is not so substantial, either in absolute or relative terms, as to raise overbreadth concerns. Nor is the standard so indeterminate as to fail to put the public on notice of what is prohibited. That courts—including this Court—have long applied analogous standards in both the Title VII and Title IX contexts without raising overbreadth or vagueness concerns demonstrates that § 106.2 comports with the First Amendment.

**C.**    Lastly, the district court erred in accepting the states' argument that the Rule fails to adequately protect parental rights. The states plainly lack standing to advance such a claim on behalf of individual citizens. In any case, the Rule is explicit that it does not limit parental rights and that where a parent and minor disagree about the appropriate response to sex discrimination, schools should defer to parents.

**III.**    The remaining preliminary-injunction factors favor the government. Most importantly, plaintiffs failed to establish irreparable harm. The ordinary costs of complying with a federal regulation do not amount to irreparable harm, particularly where (as here) the district court made no finding that the costs were sufficiently unusual or extensive to justify the extraordinary remedy of a preliminary injunction. Nor does the attenuated possibility that the Department could seek to terminate a

16

recipient's federal funding suffice; such a step is plainly not imminent, and plaintiffs cannot convert a hypothetical future harm into a present injury by complaining about the effects such uncertainty might have on their planning and budgeting process. The states' attempts to assert the constitutional rights of their citizens must fail given the Supreme Court's repeated reminders that states lack standing to do so. *See Haaland v. Brackeen*, 599 U.S. 255, 295 (2023). And all of the asserted harms upon which the plaintiff-intervenors relied rested entirely on speculation about hypothetical future events. In contrast, the equities plainly favor the implementation of a regulation intended to fight sex discrimination in education.

Finally, the preliminary injunction was at minimum overbroad. Plaintiffs' claims targeted three provisions of the Rule, and the Department's severability determinations made clear that the remaining provisions could and should take effect even if those three provisions were enjoined. The district court's sweeping injunction vastly exceeded what was necessary to redress "the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018).

## STANDARD OF REVIEW

A district court's "decision to grant or deny a preliminary injunction is reviewed for an abuse of discretion," with its "legal conclusions" reviewed "de novo and its factual findings for clear error." *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 546 (6th Cir. 2021) (emphasis and quotation marks omitted).

## ARGUMENT

### I. Gender-Identity Discrimination Is Necessarily a Form of Discrimination on the Basis of Sex.

Title IX prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681. Section 106.10 describes the scope of that prohibition, explaining that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity," 34 C.F.R. § 106.10, "because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female,'" 89 Fed. Reg. at 33,802 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 655 (2020)). Section 106.10 thus makes clear that prohibited sex discrimination under Title IX includes actions like excluding a student from homecoming for being pregnant, giving a student detention for being gay, or barring a student from band for being transgender.

The district court's decision—mirroring plaintiffs' challenges—focused only on § 106.10's inclusion of gender identity. *See* Op., RE100, PageID #2015-17; *see also* States' Mot., RE19-1, PageID #859-61; Intervenors' Mot., RE63-1, PageID #1398. The court rejected the Rule's recognition that the reasoning of *Bostock*, when applied to the text of Title IX, compels the conclusion that discrimination based on gender identity is necessarily a form of discrimination "on the basis of sex." *See* Op., RE100, PageID #2015-17. But the reasons the district court gave for that conclusion have no

18

foundation in the text of the statute and cannot be squared with the analysis in *Bostock*.

**A.** Section 106.10 reflects a straightforward application of *Bostock*'s reasoning. There, the Court confronted the provision of Title VII making it unlawful "for an employer … to discriminate against any individual … because of such individual's … sex." *Bostock*, 590 U.S. at 655 (quoting 42 U.S.C. § 2000e-2(a)(1)). The Court explained that Title VII's "because of" language "incorporates the 'simple' and 'traditional' standard of but-for causation." *Id.* at 656 (quotation marks omitted). "[S]ex is necessarily a but-for cause" of discrimination on the basis of sexual orientation or gender identity, the Court explained, "because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 660-61 (emphasis omitted). Such discrimination would, for example, "penalize[] a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." *Id.* at 660. That is true even on the assumption that "sex" in Title VII "refer[s] only to biological distinctions between male and female," *id.* at 655, and even without having to decide how the insight applies to sex differentiation in contexts such as "bathrooms, locker rooms, and dress codes," *id.* at 681.

*Bostock*'s reasoning applies with equal force to Title IX's prohibition against discrimination "on the basis of sex," 20 U.S.C. § 1681(a). Title IX imposes a causation standard no more stringent than but-for causation under Title VII. *See*

*Kollaritsch v. Michigan State Univ. Bd. of Trs.*, 944 F.3d 613, 622 (6th Cir. 2019) (applying "but for" causation to school's liability for Title IX harassment claim). And as *Bostock* made clear, "sex is necessarily a but-for cause" of discrimination on the basis of sexual orientation or gender identity. 590 U.S. at 661 (emphasis omitted). A school, no less than an employer, engages in sex discrimination when it "penalizes a person … for traits or actions that it tolerates" in persons identified as a different sex "at birth." *Id.* at 660. That is why various courts have concluded that in light of *Bostock*, discrimination on the basis of sexual orientation and gender identity are necessarily forms of prohibited sex discrimination under Title IX. *See, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020); *A.C. ex rel. M.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023). That conclusion does not depend, the Department explained, on viewing the term "sex" in Title IX to mean anything other than "physiological or 'biological distinctions between male and female.'" 89 Fed. Reg. at 33,802 (quoting *Bostock*, 590 U.S. at 655).

**B.**    None of the district court's reasons for rejecting that conclusion are valid. The court believed that § 106.10 "contravenes the plain text of Title IX by redefining 'sex' to include gender identity." Op., RE100, PageID #1996. But § 106.10 does not redefine sex—it simply applies the same analysis applied in *Bostock* to determine that discrimination on the basis of sexual orientation or gender identity is necessarily discrimination on the basis of sex even assuming a definition of sex tied

to biological distinctions.  Indeed, much of the district court's analysis appeared to be driven by the assumption that the Rule is somehow inconsistent with the view that "[t]here are two sexes: male and female."  *Id.*  But as discussed, § 106.10, like *Bostock*, recognizes that discrimination based on gender identity is sex discrimination even under that understanding of sex.  89 Fed. Reg. at 33,802 (quoting *Bostock*, 590 U.S. at 655).

The district court alternatively sought to dismiss *Bostock* as "limited to Title VII."  Op., RE100, PageID #2018; *see* Stay Order 4 (similar).  But *Bostock*'s core insight—that "it is impossible to discriminate against a person for being … transgender without discriminating against that individual *based on* sex," 590 U.S. at 660 (emphasis added)—applies equally to Title IX and Title VII.  If an employer "fires a transgender person who was identified as a male at birth but who now identifies as a female" yet "retains an otherwise identical employee who was identified as female at birth," the employer has engaged in discrimination based on sex assigned at birth because it has "intentionally penalize[d] a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth."  *Id.*  Exactly the same is true under Title IX: a school that excludes or punishes a transgender female student for being transgender has engaged in discrimination "on the basis of sex," 20 U.S.C. § 1681(a), because it has penalized her for traits it would have tolerated in an otherwise identical student identified as female at birth.

21

The district court's suggestion that *Bostock*'s reasoning cannot be applied to Title IX because the "text" of Title VII and Title IX "vary considerably," Op., RE100, PageID #2063; *see* Stay Order 5 (similar), is also wrong. Indeed, this Court has repeatedly "looked to the Title VII landscape for guidance" when interpreting Title IX precisely because "both statutes prohibit discrimination on the basis of sex." *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342, 350 (6th Cir. 2020); *see also Kollaritsch*, 944 F.3d at 622 (similar). In *Bostock* itself, the Supreme Court substituted the phrase "on the basis of" for Title VII's "because of" formulation at least eight times. *See, e.g.*, 590 U.S. at 650 (noting that "in Title VII, Congress outlawed discrimination in the workplace *on the basis of* race, color, religion, sex, or national origin" (emphasis added)). And in other contexts, the Supreme Court has explained that the ordinary meaning of "the phrase 'based on' indicates a but-for causal relationship" and that the phrase has "the same meaning as the phrase, 'because of.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (quotation marks omitted).

The district court also suggested that the "structure, purpose, and history" of Title VII and Title IX differ. Op., RE100, PageID #2063. But the court did not explain how those extra-textual factors could undermine the straightforward textual analysis set out above. In any event, the relevant purpose of both statutes is the same: to root out sex discrimination, albeit in different settings. As for the fact that Title IX contains statutory provisions allowing sex separation in some contexts, *see id.*, PageID #2064-66, those provisions do not somehow compel a different understanding of

what constitutes sex discrimination. Title VII, too contains statutory exceptions, *see* 42 U.S.C. § 2000e-2(e) (bona fide qualifications), and has long been understood to allow certain forms of sex separation, like "sex-segregated bathrooms, locker rooms, and dress codes," and yet the Supreme Court still held that gender-identity discrimination is necessarily a form of sex discrimination. *Bostock*, 590 U.S. at 681. In any event, the presence of statutory provisions that allow for sex separation in certain contexts only reinforces the Rule's conclusion: the very existence of those provisions shows that Congress understood Title IX's general prohibition against sex discrimination otherwise could have been applied to such separation or differentiation. *See Arnold, Constable & Co. v. United States*, 147 U.S. 494, 499 (1893) ("[T]he exception of a particular thing from general words proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause had the exception not been made." (quotation marks omitted)).

The district court also erred in suggesting that this Court has already rejected *Bostock*'s application to Title IX. Op., RE100, PageID #2018-19; *see also* Stay Order 5. The cases the district court cited did not arise under Title IX or address its statutory language. *See L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 484 (6th Cir. 2023) (equal-protection clause claim); *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323 (6th Cir. 2021) (Age Discrimination in Employment Act claim); *Meriwether v. Hartop*, 992 F.3d 492, 511 (6th Cir. 2021) (free speech claim where Title IX was "not implicated"). And the

23

motions panel's decision in this case is not precedential and does not bind the merits panel. *See Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014).

    **C.**     Finally, the district court erred in concluding that the Rule is suspect under the major-questions doctrine and the Spending Clause. Op., RE100, PageID #28-32; *see also* Stay Order 5. On both scores, the district court's holding stemmed from its erroneous conclusion that the Rule somehow redefined sex discrimination to mean something other than discrimination based on "biological differences" between men and women. *See* Op., RE100, PageID #28-32. As already explained, discrimination on the basis of gender identity is necessarily a form of sex discrimination covered by Title IX's unambiguous text even under that understanding of sex. *Supra* pp.18-24. Thus, Title IX places recipients of federal funds clearly on notice that they must comply with the prohibition on sex-based discrimination in all of its forms. *Cf. Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174-175 (2005) (holding that Title IX's private right of action encompasses retaliation claims even though the statute does not specifically mention retaliation). And just as the major-questions doctrine posed no obstacle to *Bostock*'s recognition that the Equal Employment Opportunity Commission had correctly interpreted Title VII to prohibit gender-identity discrimination, it poses no obstacle to recognizing that the Department has correctly interpreted the parallel text of Title IX.

II.     **The Rule's Treatment of Sex-Separate Spaces and Pronouns Comports with Title IX and the Constitution.**

    A.     **Section 106.31(a)(2)'s De Minimis Harm Standard Effectuates Title IX's Text.**

Section 106.31(a)(2) is the provision detailing when otherwise permissible separation or differentiation on the basis of sex constitutes prohibited sex discrimination. It provides that subject to certain congressionally recognized exceptions, recipients may not differentiate on the basis of sex when doing so causes more than de minimis harm. 89 Fed. Reg. at 33,815. The district court concluded that § 106.31(a)(2) contravenes Title IX, Op., RE100, PageID #2020-23, and that its application to restrooms and locker rooms was arbitrary and capricious, *id.*, PageID #2065-72. Neither conclusion withstands scrutiny.

    1.     Section 106.31(a)(2) effectuates Title IX's plain text, which prohibits "discrimination" on the basis of sex. 20 U.S.C. § 1681(a). As the Supreme Court has explained, "the term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals." *Bostock*, 590 U.S. at 681 (quotation marks omitted); *see Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024) (same). Because "the concept of discrimination includes an element of injury or harm," 89 Fed. Reg. at 33,815, the Department "does not interpret Title IX to prohibit all sex-based distinctions or separation," *id.* at 33,814. Rather, Title IX prohibits "only" those sex-based distinctions "that subject[] any person to legally cognizable injury—*i.e.*, more

25

than de minimis harm." *Id.* The Rule thus explains that recipients generally may separate or differentiate on the basis of sex where doing so causes no harm.

At the same time, the Rule recognizes that in certain contexts Congress permitted recipients to separate or distinguish on the basis of sex, even if doing so causes cognizable harm. *See* 89 Fed. Reg. at 33,816. Those contexts are limited to recognized exceptions that, among other things, permit sex-separated fraternities and sororities, 20 U.S.C. § 1681(a)(6)(A); voluntary youth service organizations, *id.* § 1681(a)(6)(B); and "living facilities," *id.* § 1686. The Rule effectuates Congress's decision to treat those contexts differently by providing that § 106.31(a)(2)'s de minimis harm standard does not apply to the statutory exemptions and the regulations implementing them. 89 Fed. Reg. at 33,816.[3]

The Rule further specifies how § 106.31(a)(2) applies to gender-identity discrimination.[4] The Rule explains that, except as provided in the recognized exceptions, recipients must permit individuals to access sex-separate facilities and programs consistent with their gender identity because "prevent[ing] a person from

---

[3] Congress also legislated separately regarding Title IX's application to athletics, *see* Education Amendments of 1974, Pub. L. No. 93-380, tit. VII, pt. D, § 844, 88 Stat. 484, 612. As the district court correctly recognized, this case does not implicate the regulation concerning sex-separate athletic teams, which is the subject of a different, ongoing rulemaking. *See* Op., RE100, PageID #2074; 89 Fed. Reg. at 33,817.

[4] Section 106.31(a)(2)'s protections are not limited to that context, instead applying "with equal force to all students." 89 Fed. Reg. at 33,818.

participating in an education program or activity consistent with the person's gender identity subjects a person to more than de minimis harm on the basis of sex." 34 C.F.R. § 106.31(a)(2).

As relevant here, the Department has long recognized that sex separation "in the context of bathrooms or locker rooms[] is not presumptively unlawful sex discrimination" because a cisgender male suffers no sex-based harm from being excluded from the women's restroom or locker room, and vice versa. 89 Fed. Reg. at 33,818. That is why existing regulations permit sex-separate "toilet, locker room, and shower facilities," so long as the facilities are "comparable." 34 C.F.R. § 106.33. But it violates Title IX to bar transgender students from accessing restrooms that align with their gender identity because doing so *does* cause cognizable harm and because restrooms are not exempted from the statute's general nondiscrimination mandate. 89 Fed. Reg. at 33,818. Consistent with that conclusion, various courts have held that school policies that prevent students from accessing the restrooms that correspond to their gender identity violate Title IX. *See, e.g.*, *A.C*, 75 F.4th at 769; *Grimm*, 972 F.3d at 616.

**2.** In holding § 106.31(a)(2) unlawful, Op., RE100, PageID #2020, the district court did not dispute that Title IX's nondiscrimination mandate generally prohibits sex distinctions that cause more than de minimis harm. Nor did the court dispute the Department's conclusion—supported by ample case law—that preventing

27

a person from participating in an education program or accessing a sex-separate facility consistent with their gender identity subjects the person to harm.

Instead, the court concluded that § 106.31(a)(2) produces "inconsistences" that "Congress could not have intended" by permitting recipients to "separate students for purposes of fraternities and sororities, but not for purposes of utilizing bathrooms." Op., RE100, PageID #2020-21.  But § 106.31(a)(2) reflects the distinctions that Congress drew in enacting Title IX.  Congress (not the Department) expressly excepted fraternities' membership practices—amongst other things—from Title IX's general nondiscrimination mandate.  *See* 89 Fed. Reg. at 33,816.  Congress included no such exemption for sex-separate restrooms and locker rooms.  *Id.* at 33,819.

The Rule effectuates the distinctions Congress drew by recognizing that Title IX requires that "a recipient must not provide sex-separate facilities or activities in a manner that subjects any person to legally cognizable injury"—including by preventing individuals from participating in a sex-separate program or activity consistent with their gender identity—"*unless there is a statutory basis for allowing otherwise*."  89 Fed. Reg. at 33,814 (emphasis added).  That careful adherence to statutory text is not "throwaway reasoning."  Op., RE100, PageID #2021.  The Supreme Court "has explained many times" that courts may not "disregard [a statute's] plain terms based on some extratextual consideration," *Bostock*, 590 U.S. at 673-74, such as the district court's speculation about purported "inconsistencies" that Congress could or "could not have intended," Op., RE100, PageID #2020-21.

The district court's ruling also finds no support in *Adams ex. rel. Kasper v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc).  *Contra* Op., RE100, PageID #2021.  There, the Eleventh Circuit reasoned that a school policy preventing transgender students from accessing sex-separate restrooms that aligned with their gender identity "fit[] squarely within" 34 C.F.R. § 106.33—the regulation allowing sex-separate restrooms—on the assumption that this regulation implements the "express carve-out with respect to living facilities."  57 F.4th at 811 (citing 20 U.S.C. § 1686).  But as the Department subsequently explained, although § 1686 "specifically carves out from Title IX's general statutory prohibition on sex discrimination an allowance for recipients to maintain sex-separate living facilities," that provision does not apply "to any other aspects of a recipient's education program or activity … such as bathrooms, locker rooms, or shower facilities."  89 Fed. Reg. at 33,821.  That is why the Department's longstanding regulation regarding "toilet, locker room, and shower facilities" was promulgated pursuant to the statute's general nondiscrimination mandate, 20 U.S.C. § 1681, not the living-facilities provision.  89 Fed. Reg. at 33,821.

**3.**     The district court separately erred in holding that § 106.31(a)(2)'s application to sex-separate spaces like restrooms and locker rooms was arbitrary and capricious.  Op., RE100, PageID #2065-72.  The arbitrary and capricious standard is "deferential" and requires only "a reasoned explanation" for the agency's actions. *Watson v. Solis*, 693 F.3d 620, 623-24 (6th Cir. 2012) (quotation marks omitted).  The Rule's extensive discussion of § 106.31(a)(2)'s applications to sex-separate spaces—

including issues related to safety, privacy, and compliance—easily satisfies this "least demanding form of judicial review." *Id.* at 623 (quotation marks omitted).

Much of the district court's reasoning merely collapses into its flawed conclusion that the Rule contravenes Title IX. Op., RE100, PageID #2065. But as explained, *see supra* pp.25-29, the Rule reflects distinctions made by Congress, not the Department. Congress excluded sex-separate living facilities and other specific contexts from Title IX's nondiscrimination mandate; it did not exempt restrooms or locker rooms. *See* 89 Fed. Reg. at 33,816. The Department "clearly articulated," Op., RE100, PageID #2067, how those congressional choices affect the Rule's operation, explaining that "§ 106.31(a)(2) applies in contexts for which there is no statutory exception, such as sex-separate restrooms and locker rooms," 89 Fed. Reg. at 33,819. The Department hardly acted "arbitrarily," Op., RE100, PageID #2065, in recognizing the distinctions drawn by Congress and effectuating Title IX's nondiscrimination mandate accordingly.

The district court also believed that the Rule failed to "adequately account[]for" the "safety and privacy interests at stake" in restrooms and locker rooms. Op., RE100, PageID #2067. The Rule, however, thoroughly addressed these concerns, explaining that the Department "agrees that recipients have a legitimate interest in protecting all students' safety and privacy" and that such goals are not "inconsistent with § 106.31(a)(2)." 89 Fed. Reg. at 33,820. The Rule emphasized that nothing prevents recipients from taking steps "to ensure privacy and safety for all students in a

30

recipient's sex-separate facilities—steps that many recipients already take consistent with their general codes of conduct, including rules prohibiting harassment, assault, and other forms of misconduct." *Id.* The Rule further explained that recipients may "offer[] single-occupancy facilities, among other accommodations, to any students who seek additional privacy for any reason." *Id.*[5]

The court nonetheless insisted that "more [was] required" to address the purported "safety risk to other students" posed by "transgender students." Op., RE100, PageID #2068. But the Department reasonably explained that, based on its "enforcement experience, listening sessions with stakeholders, and its review of Federal case law," it disagreed that "transgender students pose a safety risk to cisgender students, or that the mere presence of a transgender person in a single-sex space compromises anyone's legitimate privacy interest." 89 Fed. Reg. at 33,820. The Department pointed to the experience of schools across the country who attested that, when "integrat[ing] transgender students into gender-specific facilities," "hypothetical fears and concerns" regarding safety and privacy have been "wholly unfounded in practice." Amici Brief of School Administrators, *Grimm v. Gloucester Cty. Sch. Bd.*, No. 19-1952 (4th Cir. Nov. 25, 2019), 2019 WL 6341095, at *18-19; *see* 89

---

[5] The Rule explained that recipients are not required to provide "single-occupancy facilities" both "because such facilities are not the only way a recipient could provide nondiscriminatory access to its facilities" and because it "would likely carry significant cost implications." 89 Fed. Reg. at 33,820. Contrary to the district court, then, the Department did consider the "cost implications" for recipients of providing such facilities. Op., RE100, PageID #2071.

Fed. Reg. at 33,820. It also noted various court decisions that have rejected "unsubstantiated" and "generalized" claims that "transgender persons' access to sex-separate spaces infringes on other students' privacy or safety." 89 Fed. Reg. at 33,820 (citing examples). No more was required to justify the conclusion that a "recipient can make and enforce rules that protect all students' safety and privacy without also excluding transgender students from accessing sex-separate facilities and activities consistent with their gender identity." *Id.*

The district court similarly erred in suggesting that the Department "fail[ed] to address" whether a recipient "may require gender verifying documentation." Op., RE100, PageID #2065. The Department explained that recipients may rely "on written confirmation of the student's gender identity by the student or student's parent, counselor, coach, or teacher." 89 Fed. Reg. at 33,819 (noting also that recipients may rely on "a student's *consistent* assertion" (emphasis added)). Recipients may also request documentation such as an amended birth certificate or evidence of medical treatment, except where "access to such documentation is prohibited by law in that jurisdiction." *Id.* That hardly amounts to a "requirement of allowing any person unfettered, unverified access" to schools' sex-separate facilities, as the court suggested, Op., RE100, PageID #2071.

32

**B.   The Rule's Prohibition on Hostile-Environment Harassment Raises No First Amendment Concerns.**

The district court also erred in holding that the Rule's prohibition on harassment—particularly, the application of § 106.2's definition of hostile-environment harassment to certain contexts involving transgender individuals—contravenes the First Amendment. Op., RE100, PageID #2027-51. The court's conclusion rests on a basic misapprehension of how § 106.2 operates as well as a disregard for longstanding antidiscrimination practice and principles.

1.   It is well established that prohibited sex discrimination under Title IX includes sex-based harassment. *See Jackson*, 544 U.S. at 174. One form of prohibited harassment is hostile-environment harassment, which § 106.2 defines as "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (*i.e.*, creates a hostile environment)." 34 C.F.R. § 106.2.

The Rule makes a handful of changes to the definition of hostile-environment harassment promulgated in 2020, but the standard announced in § 106.2 is hardly novel. *See* 89 Fed. Reg. at 33,497. It closely tracks the Department's "longstanding interpretation of Title IX" and accompanying "enforcement practice" prior to the 2020 amendments. *Id.* at 33,508; *see Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, 66 Fed. Reg. 5512 (Jan. 19,

2001).[6] It also mirrors the standards applied in the context of "numerous civil rights laws, including Title VII." 89 Fed. Reg at 33,508; *see Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (applying a severe "or" pervasive standard to conduct that "alter[ed] the conditions" of employment (quotation omitted)); *see also Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018) (explaining that "[a] Title IX hostile-environment claim is analogous to a Title VII hostile-environment claim").

Prior to this litigation, no court had held that the standards for evaluating hostile-environment harassment long applied in the Title VII and Title IX contexts contravened the First Amendment. To the contrary, the Supreme Court upheld "similar proscriptions on hostile environment harassment" in both contexts "without raising any First Amendment concerns." 89 Fed. Reg. at 33,505-06 (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) (Title IX);[7] *Harris*, 510 U.S. at 23 (holding Title VII's harassment standard applied to sex-based insults, despite

---

[6] Whereas the 2020 standard prohibited unwelcome sex-based conduct "determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person" access to an education program or activity, 34 C.F.R. § 106.30(a)(2) (2020), § 106.2 prohibits unwelcome sex-based conduct that, "based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies" such access.

[7] In *Davis*, the Court addressed the standard for a private damages claim premised on hostile-environment harassment brought under Title IX's implied right of action. 526 U.S. at 650. Although the *Davis* standard differs from § 106.2 in certain respects, the standard for private damages actions need not control in the administrative enforcement context. *See* 89 Fed. Reg. at 33,497-501. The district court, moreover, nowhere suggested that the Rule was invalid for departing from *Davis*. *See* Op., RE100, PageID #2027-51.

34

First Amendments objections)).  That makes sense:  A recipient can safeguard the expression of "politically charged and contentious ideas" consistent with the First Amendment, Op., RE100, PageID #2030, while still protecting students from an "educational experience … 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of the victim's' educational environment."  *Doe*, 882 F.3d at 590 (second alteration in original) (quoting *Harris*, 510 U.S. at 21).

    If any doubt remained, the Rule also makes clear that "nothing in the regulations"—including § 106.2—"requires or authorizes a recipient to violate anyone's First Amendment rights."  89 Fed. Reg. at 33,516; *see also* 34 C.F.R. § 106.6(d).  Thus, while recipients must address hostile environments, the "First Amendment may in certain circumstances constrain the manner in which a recipient responds to sex-based harassment in the form of speech."  89 Fed. Reg. at 33,503.

    **2.**    The district court nonetheless believed that the standard "compel[s] speakers to affirm the concept of gender identity" by requiring "students and teachers to use 'preferred' rather than accurate pronouns."  Op., RE100, PageID #2037, 2043 (quotation omitted).  But § 106.2 neither compels any particular speech by students or staff, nor requires anyone to affirm "any particular view on any issue."  89 Fed. Reg. at 33,505.  The Rule merely requires that federal funding *recipients* address sex-based harassment that is "subjectively and objectively offensive" and so "severe or

pervasive" as to limit or deny a person's ability to access their educational programs. 34 C.F.R. § 106.2.

Requiring schools to address sex-based harassment—even where it involves speech—is different in kind from "telling" individual students and staff "what they must say." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006). The government can ensure that the classroom, no less than the workplace, is free from sex-based "intimidation, ridicule, and insult" without governing every "utterance," *Harris*, 510 U.S. at 21 (quotation marks omitted), and while preserving the right of individuals to be free from compelled speech under the First Amendment. This Court recently recognized as much in upholding a school's harassment policy that prohibited the "intentional use of non-preferred pronouns," explaining that the prohibition did not "unconstitutionally compel[] speech" because students had "options" for complying with the policy—such as "us[ing] no pronouns at all"—that did "not violate their conscience." *Parents Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, --- F.4th ----, 2024 WL 3565635, at *7-8 (6th Cir. July 29, 2024). Likewise, the Rule requires recipients to "formulate, interpret, and apply its rules in a manner that respects the legal rights of students and employees when taking action to end sex-based harassment that creates a hostile environment." 89 Fed. Reg. at 33,503.

The district court thus badly misreads the Rule in suggesting that students and faculty must "abide by preferred pronouns" or else expose "a recipient of Federal funds to liability under Title IX." Op., RE100, PageID #2041. The Department

explained that "whether verbal conduct constitutes sex-based harassment is necessarily [a] fact-specific" inquiry, but that "a stray remark, such as a misuse of language, would not constitute" harassment. 89 Fed. Reg. at 33,516. Even if there were circumstances in which the persistent or acute refusal to use pronouns consistent with a student's gender identity contributed to a claim of hostile-environment harassment, nothing in the Rule would "require[] or authorize[]" the recipient to take remedial measures that would "violate anyone's First Amendment rights." *Id.* at 33,516; *see e.g.*, *Parents Defending Educ.*, 2024 WL 3565635, at *7-8. Nor would anything in the Rule require or authorize the recipient to "compel[] silence of opposing viewpoints." Op., RE 100, PageID #2037.

The district court improperly dismissed the Rule's express First Amendment protections "as little more than a paper tiger," Op., RE100, PageID #2041, based on an amicus brief the government filed years before the Rule's publication, *see* Amicus Brief of the United States, *Kluge v. Brownsburg Cmty. Sch. Corp.*, No. 21-2475 (7th Cir. Nov. 8, 2021), 2021 WL 5405970 (U.S. Amicus). But as the court recognized, the "only claim[]" at issue there was "grounded in Title VII," Op., RE100, PageID #2039 n.13, and concerned whether a school permissibly declined to retain a particular accommodation for a teacher's religious objection "to referring to transgender students by names and pronouns that match[ed] their gender identities." U.S. Amicus 2-3. The brief argued that the school acted lawfully in the particular circumstances presented there, in part, because specific evidence showed that the teacher's proposed

workaround "harmed students" in a way that "could potentially" have supported a

Title IX claim and made school officials "reasonably concerned that if they took no

action to address the situation," they faced increased ligation risk. *Id.* at 29-30.

Nothing in the filing addressed the standard for hostile-environment harassment,

much less undermines the Department's commitment that "nothing in the [Rule]

requires or authorizes a recipient to violate anyone's First Amendment rights." 89

Fed. Reg. at 33,516.

The district court's ruling also finds no support in *Meriwether*, 992 F.3d 492.

*Contra* Op., RE100, PageID #2034-36. There, the Court reversed the dismissal of a

college professor's First Amendment compelled-speech claim based on allegations

that he suffered disciplinary action for failing to comply with a policy that required

faculty to "refer to students by their preferred pronoun[s]" and that applied despite

the professor's "religious objections." *Meriwether*, 992 F.3d at 498 (alteration in

original) (quotation marks omitted). The Court nowhere suggested that a narrowly

tailored harassment standard—like the one set out in § 106.2—conflicts with the First

Amendment. To the contrary, the Court recognized that Title IX prohibits hostile-

environment harassment, including "discriminatory intimidation, ridicule, and insult

that is sufficiently severe or pervasive so as to alter the conditions of the victim's

educational environment," *id.* at 511 (quoting *Doe*, 882 F.3d at 590)—a standard

materially indistinguishable from the one articulated in § 106.2. The Court simply

concluded that Title IX's prohibition on sex-based harassment was "not implicated"

because there was no indication "at this stage of the litigation" that the professor's failure to comply with the policy "inhibited" any student's "education or ability to succeed in the classroom." *Id.*

 **3.** The district court erred in concluding that § 106.2's definition of hostile-environment harassment was so "vague" and "overbroad" as to "chill" protected speech. Op., RE100, PageID #2044. Overbroad laws "prohibit[] a substantial amount of protected speech both in an absolute sense and relative to the statute's plainly legitimate sweep," while vague laws "fail to give … a reasonable opportunity to know what is prohibited" and "create a danger of arbitrary and discriminatory enforcement." *Entertainment Prods., Inc. v. Shelby Cty.*, 588 F.3d 372, 379 (6th Cir. 2009) (quotation marks omitted). This Court has "repeatedly" warned that "[f]acial invalidation" of an overbroad or vague regulatory scheme is "strong medicine" that should be "deployed sparingly and only as a last resort." *Id.* (quotation marks omitted). Such extraordinary relief is not "unambiguously warranted" here. *Id.* at 380.

Section 106.2's definition of hostile-environment harassment poses no overbreadth problems. It "covers only sex-based conduct that is unwelcome, both subjectively and objectively offensive, and so severe or pervasive that it limits or denies a person's ability to participate in" an education program or activity. 89 Fed. Reg. at 33,503. The Rule "only prohibit[s] conduct that meets all the[se] elements" and requires an evaluation based on the "totality of the circumstances" to ensure that

no "required element[] … is ignored." *Id.* at 33,506. Even if the prohibition occasionally "sweeps in speech," *id.* at 33,494, there is no indication that the standard prohibits a substantial amount of protected speech "in an absolute sense" or relative to the Rule's "plainly legitimate sweep." *Entertainment Prods.*, 588 F.3d at 379 (quotation marks omitted); *see also Parents Defending Educ.*, 2024 WL 3565635, at *11 (rejecting overbreadth challenge to harassment policy).

Courts and agencies have long applied analogous harassment standards in the Title VII and Title IX contexts. *See Harris*, 510 U.S. at 23; *Rowles v. Curators of the Univ. of Mo.*, 983 F.3d 345, 352, 355 (8th Cir. 2020) (rejecting overbreadth challenge to standard nearly identical to § 106.2). That includes this Court, which has articulated and applied similar standards in cases arising under both statutes. *See, e.g., Meriwether*, 992 F.3d at 511; *Doe*, 882 F.3d at 590; *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013) (concluding that being "repeatedly … called derogatory and demeaning names" was "severe or pervasive harassment" under Title VII). The district court simply ignored this well-established precedent.

The court also failed to identify "a substantial number of instances … in which" the hostile-environment standard "cannot be applied constitutionally." *Entertainment Prods.*, 588 F.3d at 379 (quotation marks omitted). Instead, the court focused on the Rule's application to a narrow set of contexts involving gender identity, such as pronoun usage. Op., RE100, PageID #2048. As explained, *supra* pp. 35-38, the court misunderstands the Rule's operation in those contexts. In any event,

the requirement that a provision's "overbreadth be substantial" is "vigorously enforced," *Entertainment Prods.*, 588 F.3d at 379 (quotation marks omitted), and "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge," *Members of the City Council of the City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

The court was also wrong to suggest that the Rule is overbroad because § 106.2 may apply "outside of the classroom." Op., RE100, PageID #2050. As the Department explained, a recipient's obligation is to address a hostile environment occurring "under its education program or activity, even when some conduct alleged to be contributing to the hostile environment occurred outside" the program or activity. 89 Fed. Reg. at 33,530. That is consistent with this Court's precedent, which recognizes that schools may regulate "off-campus speech that materially disrupts classwork or involves substantial disorder or invasions of the rights of others," such as social media posts that cause "serious or severe harassment" of teachers and students. *Kutchinski ex rel. H.K. v. Freeland Cmty. Sch. Dist.*, 69 F.4th 350, 357-58 (6th Cir. 2023) (quotation marks omitted).

Section 106.2's definition of hostile-environment harassment also is not vague. It offers "specific and required elements," 89 Fed. Reg. at 33,506, "using language with common usage and understanding" in the antidiscrimination context, *Rowles*, 983 F.3d at 358. And it enumerates relevant considerations based on factors that "courts and agencies have used in evaluating a hostile environment" in both the Title VII and

Title IX contexts.  89 Fed. Reg. at 33,512.  Indeed, the Department discussed at length questions the district court deemed unaddressed regarding the "objectively offensive," "severe or pervasive," and "limits or denies" elements.  Op., RE100, PageID #2046-49.[8]  The hostile-environment standard's specificity and long lineage more than suffices to put the public on constitutionally adequate notice of its contours and demonstrates that it is neither unworkable nor prone to arbitrary enforcement.

The district court's remaining grounds for deeming the hostile-environment standard vague fare no better.  The court faulted the standard for being "entirely fact-dependent," Op., RE100, PageID #2046, but the Supreme Court has explained that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," *Harris*, 510 U.S. at 23.  Likewise, the standard is not vague merely because it applies to discrimination based on "gender identity," a term the Department declined to define.  *Contra* Op., RE100, PageID #2045.  The Department explained that "a specific definition" was unnecessary because the "term is now well understood" and "used widely in laws and policies."  89 Fed. Reg. at 33,809.  Even so, the Rule did "offer[] … guidance," Op., RE100, PageID #2045 (emphasis omitted), explaining that gender identity "describe[s] an individual's sense of their gender, which may or may not be different from their sex assigned at birth," 89 Fed. Reg. at 33,809.

---

[8] *See* 89 Fed. Reg. at 33,509 (addressing "Subjectively and Objectively Offensive"); *id.* at 33,508 ("Severe or Pervasive"); *id.* at 33,511 ("Limits or Denies").

**C.     The Rule Protects Parental Rights.**

The district court further erred in holding that the Rule interferes with parents'
rights by requiring schools "to accommodate the stated gender identity of each
student." Op., RE100, PageID #2058-59. This argument was advanced exclusively
by the states, *see* States' Mot., RE19-1, PageID #870, which cannot invoke the rights
of parents against the federal government, *see infra* pp.47-48 (discussing *Haaland v.
Brackeen*, 599 U.S. 255, 295 (2023)), particularly where they failed to identify any
parent whose rights would be threatened by the Rule.

In any case, "nothing in the final regulations disturbs parental rights." 89 Fed.
Reg. at 33,821; *see also* 34 C.F.R. § 106.6(g). As the Department made clear, "[w]hen a
parent and minor student disagree about how to address sex discrimination against
that student, deference to the judgment of a parent, guardian, or other authorized
legal representative with a legal right to act on behalf of that student is appropriate."
89 Fed. Reg. at 33,822. *Contra* Op., RE100, PageID #2060 (suggesting that the Rule
does not clarify whether "schools must adopt their students' gender identity even over
a parental objection"). At most, the district court gestured to situations where schools
might treat students consistent with their gender identity even though "the student
chooses not to involve his or her parents." *Id.*, PageID #2059. The district court
cited no authority for the proposition that parents have a constitutional right to have
school employees consult with them before using a particular pronoun to address
their children—but if they do, the Rule makes clear that it must not "be read in

43

derogation of any legal right of a parent to act on behalf" of a minor child.  34 C.F.R.

§ 106.6(g).  In any event, if a recipient wants to notify parents in such circumstances,

it may do so—nothing in the Rule "prohibits a recipient from notifying a parent,

guardian, or authorized legal representative of a minor student's complaint alleging

sex discrimination so they can exercise their rights to act on behalf of the minor

student."  89 Fed. Reg. at 33,540.

## III.  The Remaining Factors Weigh Against Preliminary Injunctive Relief.

The preliminary injunction should be vacated for the independent reason that

plaintiffs have not made the requisite "clear showing" that the remaining preliminary

injunction factors are satisfied.  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22

(2008).  Plaintiffs have not established that they will suffer immediate and irreparable

harm absent the injunction.  Nor have they demonstrated that the balance of harms

and public interest weigh in favor of preliminary relief.

### A.  Plaintiffs Failed to Establish Irreparable Harm.

"Irreparable harm is an indispensable requirement for a preliminary

injunction."  *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir.

2020) (quotation marks omitted).  The asserted injury "must be both certain and

immediate, not speculative or theoretical."  *Id.* (quotation marks omitted).  The district

court erred in concluding that plaintiffs had made that showing.

44

1.    The district court concluded that the costs of complying with the Rule amounted to irreparable harm.  Op., RE100, PageID #2074-78.  Because compliance costs "commonly result from new government regulation," this Court looks to the "peculiarity and size" of those costs in evaluating whether they suffice.  *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023).  Plaintiffs, however, made no effort to quantify their costs or to tie those costs to the provisions they challenged.

Absent such a showing, courts routinely reject claims of irreparable harm.  *See Pennsylvania v. DeVos*, 480 F. Supp. 3d 47, 68 (D.D.C. 2020) (rejecting claims of irreparable harm premised on undifferentiated costs in challenge to 2020 Title IX Rule); *New York v. U.S. Dep't of Educ.*, 477 F. Supp. 3d 279, 304 (S.D.N.Y. 2020) (same).  And while the district court believed that the "short timeframe" available to schools weighed in favor of irreparable harm, Op., RE100, PageID #2077, the 2020 rule gave schools a similar period to comply.  *See* 2020 Regulation, 85 Fed. Reg. at 30,028 (published May 19, 2020; effective August 14, 2020).  Moreover, the overwhelming majority of the costs about which plaintiffs have speculated relate to unchallenged provisions of the Rule.  *See, e.g.*, Op., RE100, PageID #2076 (pointing to costs associated with Rule's training requirements).  Those costs represent the sort of garden-variety expenses that school districts incur every year.  *See* Tr., RE109, PageID #2148 (Tennessee witness agreeing that it is part of a "school's general routine practice" to provide Title IX training); *see also id.*, PageID #2184 (similar).

45

**2.**     The district court's suggestion that the states face irreparable harm in the form of potential loss of federal funding, Op., RE100, PageID #2077-81, is plainly wrong.  The court made no finding that any recipient faced an imminent loss of federal funding.  *See D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019) (requiring that injury be both "imminent and irreparable").  Nor is that surprising, for "Title IX clearly provides that an agency may not take administrative action to revoke a recipient's funding until notice and opportunity to cure has been provided." *New York*, 477 F. Supp. 3d at 304 n.12.  In particular, funding cannot be terminated until (1) the Department has unsuccessfully endeavored to obtain voluntary compliance, (2) the recipient has had an opportunity to contest the Department's allegations at an administrative hearing; (3) the Department has provided notification to Congress; and (4) 30 days have passed.  *See* 20 U.S.C. § 1682.[9]

The district court instead observed that the mere possibility of such termination in the future would make "budget planning … difficult" now.  Op., RE100, PageID #2081.  But a plaintiff may not demonstrate irreparable harm by recharacterizing a hypothetical future monetary injury as a present uncertainty injury.  Indeed, in the Article III context, the Supreme Court has held that a plaintiff may not rely on an injury that is not "certainly impending" by focusing on its present effects,

---

[9] After unsuccessfully seeking voluntary compliance, the Department also has the option of referring the matter to the Department of Justice to bring a civil action. *See* 20 U.S.C. § 1682; 34 C.F.R. § 100.8(a)(1).

as "allowing respondents to bring [an] action based on costs they incurred in response to a speculative threat would be tantamount to accepting" as sufficient that speculative threat itself. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 316 (2013).[10]

**3.**    The district court suggested that the Rule will prevent some plaintiff states from enforcing their laws. Yet the Rule does not actually prevent the states from enforcing their laws; in implementing Spending Clause legislation, it operates "in the nature of a contract: in return for federal funds, the States *agree* to comply with federally imposed conditions," *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (emphasis added). States have no right to demand the federal government's money while rejecting the terms on which the federal government has elected to make that money available. To the extent that *Tennessee v. Department of Education*, 104 F.4th 577, 613 (6th. Cir. 2024), suggests states suffer irreparable harm whenever they are dissatisfied with conditions on federal funding, we respectfully preserve our disagreement—and even if such asserted harm "favors" plaintiffs, *id.*, it would not outweigh plaintiffs' inability to satisfy the remaining equitable factors.

---

[10] The district court's suggestion that litigants need not "bet the farm by taking the violative action before testing the [validity of the] law," Op., RE100, PageID #2081 (quoting *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 606 (4th Cir. 2024)), is not to the contrary. *Tennessee* rejects the proposition that pre-enforcement review of a Department guidance document was unavailable. *See Tennessee*, 104 F.4th at 603. The Department here is not contesting the availability of pre-enforcement review; it is suggesting that "there's no need to grant relief now as opposed to at the end of the lawsuit." *D.T.*, 942 F.3d at 327 (emphasis omitted).

**4.**    The district court concluded that citizens of the plaintiff states, as well as the intervenor plaintiffs, would suffer injuries to their privacy, safety, and First Amendment rights. *See* Op., RE100, PageID #2082-83. Precedent makes clear, however, that a "State does not have standing as *parens patriae* to bring an action against the Federal Government." *Haaland*, 599 U.S. at 295 (quotation omitted). Even if the court were correct that states may assert "quasi-sovereign interests" against the federal government, *see* Op., RE100, PageID #2082, that principle is irrelevant here, where the states are simply asserting their citizens' individual rights.

As for the intervenor plaintiffs, the district court cited no evidence for its conclusion that "Christian Educators has sufficiently alleged such claims to establish irreparable injury." Op., RE100, PageID #2082. To the contrary, the intervenors relied entirely on a handful of speculative declarations. *See, e.g.*, Campbell Decl., RE72-5, PageID #1684, ¶ 39 ("I am also afraid that the new Title IX rule will prevent me from discussing my views with other teachers or responding honestly if a student asks me my views on gender identity."); Keaton Decl., RE72-6, PageID #1692, ¶ 31 ("I fear that … I will be kept from speaking the truth about religious and controversial topics … ."); Taylor Decl., RE72-9, PageID #1717, ¶ 48 ("I fear I will be punished for violating the new rules."). Such "speculative [and] theoretical" allegations of harm do not suffice. *Michigan Coal. of Radioactive Material Users v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991); *see also, e.g., Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023).

48

**B.    The Equities and Public Interest Weigh Against an Injunction.**

The remaining factors tilt decisively towards the Department.  Every time the federal government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quotation marks omitted). The harm is particularly pronounced here because the Rule effectuates Title IX's goals of "avoid[ing] the use of federal resources to support discriminatory practices [and] provid[ing] individual citizens effective protection against those practices." *Cannon v. University of Chi.*, 441 U.S. 677, 704 (1979).  No one disputes that preventing discrimination serves a compelling public interest.  *See EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1359 (6th Cir. 1975).  By contrast, plaintiffs would suffer no cognizable harm from litigating their claims on an ordinary schedule—and in any case any such harms would be dramatically outweighed by the government's interest in stamping out sex discrimination and ensuring all students' access to federally funded educational opportunities.  *Cf. Winter*, 555 U.S. at 23 (public interest in naval training "outweighed" irreparable injury to wildlife).

**IV.    At a Minimum, the Injunction Is Overbroad.**

Finally, at a minimum, the preliminary injunction was overbroad, for "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" on their valid claims.  *Califano v. Yamasaki*,

442 U.S. 682, 702 (1979); *see also Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 364 (6th Cir. 2022) (preliminary injunction is "overly broad when there is a risk that it restrains legal conduct").

**A.**     The district court erred in extending its injunction to provisions that plaintiffs have not even challenged.  As set out above, plaintiffs challenged three provisions of the Rule:  34 C.F.R. § 106.10, 34 C.F.R. § 106.31(a)(2), and 34 C.F.R. § 106.2's definition of hostile-environment harassment.  But the Rule makes dozens of unrelated changes, most of which have nothing to do with gender identity.  The district court did not find any of those provisions unlawful, and there was accordingly no basis to enjoin the Department from enforcing unrelated provisions that could easily have been issued as separate rules.

The district court also erred in enjoining § 106.10.  Even putting aside plaintiffs' failure to demonstrate a likelihood of success as to this provision, *see supra* pp.18-24, plaintiffs do not identify any harm they would suffer if they could not engage in discrimination on the basis of gender identity (let alone the other bases listed in § 106.10, such as pregnancy or sex stereotypes).  They have never suggested that they wish to punish transgender students "simply for being … transgender," *Bostock*, 590 U.S. at 651, by, for example, barring them from participating in the science fair, the marching band, or student government.

Finally, the district court erred in enjoining § 106.2 other than the definition of hostile-environment harassment as applied to discrimination on the basis of gender

identity.  Section 106.2 defines more than a dozen terms used throughout the Title IX regulations.  Plaintiffs challenge only the definition of hostile-environment harassment, and they principally object to the application of this standard to discrimination on the basis of gender identity, focusing on pronouns and salutations.  States' Mot., RE19-1, PageID #867-68; Intervenors' Mot., RE63-1, PageID #1411-12; *see also* Op., RE100, PageID #2037, 2044.  There was no basis for enjoining any more of § 106.2 than the definition of hostile-environment harassment as applied to gender-identity discrimination.

**B.**    The motions panel's unpublished order—which as set out above does not bind the merits panel—does not counsel otherwise.  The motions panel believed that § 106.10 implicates "every substantive provision of the Rule" because "there are 'numerous' references to sex discrimination throughout the Rule."  Stay Order 6.  But the Rule's unchallenged provisions would remain operative even if § 106.10 remained enjoined.

The motions panel appeared to assume that because many provisions of the Rule refer to sex discrimination, those provisions cannot function without § 106.10.  But the Department's pre-existing regulations (amended in 2020) repeatedly reference "sex discrimination" without defining that term or clarifying its scope.  *See, e.g.*, 34 C.F.R. § 106.8(a) (2020) (Title IX coordinators); *id.* § 106.8(c) (2020) (grievance procedures); *id.* § 106.8(d) (2020) (extraterritoriality); *id.* § 106.71(a) (2020) (retaliation).  Earlier regulations, too, have long referred to "discrimination on the basis of sex" and

51

"discrimination based on sex" without defining those terms. *E.g.*, 45 C.F.R. §§ 86.1, 86.3(a)-(b), 86.4, 86.6(a), 86.9(a), (c), 86.36(a)-(c), 86.37(a)(2), (b), 86.38(a), 86.39, 86.51(a)(4), 86.53, 86.56(b), 86.59 (1975). In short, the term "sex discrimination" or its variants has been ubiquitous in the Department's Title IX regulations for decades, and both the Department and regulated entities have understood that term to simply incorporate Title IX's prohibition on discrimination "on the basis of sex," 20 U.S.C. § 1681(a), without further regulatory gloss. If § 106.10 remained enjoined, regulated entities would apply the rest of the updated Title IX regulations in the Rule in accordance with the text of Title IX, relevant precedent, and valid and unenjoined regulations.

The panel majority also faulted the Department for failing to consider whether other provisions of the Rule should remain in effect if § 106.10 were held invalid. Stay Order 8. In actuality, the Department specified that the provisions of the Rule are "intended to operate independently of each other" and confirmed that pre-existing severability clauses in the Title IX regulations apply to the Rule, such that "the potential invalidity of one provision should not affect the other provisions." 89 Fed. Reg. at 33,848. Those clauses specify that "[i]f any provision of this subpart or its application to any person, act, or practice is held invalid, the remainder of the subpart or the application of its provisions to any person, act, or practice shall not be affected thereby." 34 C.F.R. §§ 106.16, 106.48. The Rule thus expressly instructs that "the potential invalidity of one provision should not affect the other provisions." 89 Fed.

Reg. at 33,848.  And the Rule explains how unchallenged provisions, such as the "specific grievance procedure requirements," "operate separately from the clarification of the scope of sex discrimination under § 106.10."  *Id.*  The legal disputes concerning Title IX's application to gender-identity discrimination thus provide no justification for delaying or blocking the implementation of those important and unrelated reforms.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's preliminary injunction.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

*Of Counsel:*

LISA BROWN
*General Counsel*
*U.S. Department of Education*

MELISSA N. PATTERSON
 */s/ Steven A. Myers*
STEPHANIE R. MARCUS
JACK STARCHER
DAVID L. PETERS
STEVEN A. MYERS

*Attorneys, Appellate Staff*
*Civil Division, Room 7232*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*
*Steven.A.Myers@usdoj.gov*

August 2024

53

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,940 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Steven A. Myers*
Steven A. Myers

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/ Steven A. Myers*
Steven A. Myers

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), the government designates the

following district court documents as relevant:

| Record Entry | Description | PageID Range |
| --- | --- | --- |
| RE1 | States' Complaint | 1-799 |
| RE19 | States' PI Motion | 838-984 |
| RE63 | Intervenors' PI Motion | 1383-1436 |
| RE72 | Intervenors' Complaint | 1486-1718 |
| RE73 | Defendants' Response to States' PI Motion | 1542-1575 |
| RE91 | Defendants' Response to Intervenors' PI Motion | 1791-1819 |
| RE92 | States' PI Reply | 1820-1860 |
| RE99 | Intervenors' PI Reply | 1974-1995 |
| RE100 | Memorandum Opinion and Order | 1996-2088 |
| RE103 | Notice of Appeal | 2093-2095 |
| RE109 | Transcript of Preliminary Injunction Hearing | 2121-2310 |

**ADDENDUM**

# TABLE OF CONTENTS

20 U.S.C. § 1681 ................................................................................................A1

20 U.S.C. § 1682 ................................................................................................A4

**20 U.S.C. § 1681**

**§ 1681. Sex**

   (a) Prohibition against discrimination; exceptions

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, except that:

      (1) Classes of educational institutions subject to prohibition

in regard to admissions to educational institutions, this section shall apply only to institutions of vocational education, professional education, and graduate higher education, and to public institutions of undergraduate higher education;

      (2) Educational institutions commencing planned change in admissions

in regard to admissions to educational institutions, this section shall not apply (A) for one year from June 23, 1972, nor for six years after June 23, 1972, in the case of an educational institution which has begun the process of changing from being an institution which admits only students of one sex to being an institution which admits students of both sexes, but only if it is carrying out a plan for such a change which is approved by the Secretary of Education or (B) for seven years from the date an educational institution begins the process of changing from being an institution which admits only students of only one sex to being an institution which admits students of both sexes, but only if it is carrying out a plan for such a change which is approved by the Secretary of Education, whichever is the later;

      (3) Educational institutions of religious organizations with contrary religious tenets

this section shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization;

      (4) Educational institutions training individuals for military services or merchant marine

this section shall not apply to an educational institution whose primary purpose is the training of individuals for the military services of the United States, or the merchant marine;

      (5) Public educational institutions with traditional and continuing admissions policy

in regard to admissions this section shall not apply to any public institution of undergraduate higher education which is an institution that traditionally and

continually from its establishment has had a policy of admitting only students of one sex;

  (6) Social fraternities or sororities; voluntary youth service organizations

this section shall not apply to membership practices--

   (A) of a social fraternity or social sorority which is exempt from taxation under section 501(a) of Title 26, the active membership of which consists primarily of students in attendance at an institution of higher education, or

   (B) of the Young Men's Christian Association, Young Women's Christian Association, Girl Scouts, Boy Scouts, Camp Fire Girls, and voluntary youth service organizations which are so exempt, the membership of which has traditionally been limited to persons of one sex and principally to persons of less than nineteen years of age;

  (7) Boy or Girl conferences

this section shall not apply to--

   (A) any program or activity of the American Legion undertaken in connection with the organization or operation of any Boys State conference, Boys Nation conference, Girls State conference, or Girls Nation conference; or

   (B) any program or activity of any secondary school or educational institution specifically for--

    (i) the promotion of any Boys State conference, Boys Nation conference, Girls State conference, or Girls Nation conference; or

    (ii) the selection of students to attend any such conference;

  (8) Father-son or mother-daughter activities at educational institutions

this section shall not preclude father-son or mother-daughter activities at an educational institution, but if such activities are provided for students of one sex, opportunities for reasonably comparable activities shall be provided for students of the other sex; and

  (9) Institution of higher education scholarship awards in "beauty" pageants

this section shall not apply with respect to any scholarship or other financial assistance awarded by an institution of higher education to any individual because such individual has received such award in any pageant in which the attainment of such award is based upon a combination of factors related to the personal appearance, poise, and talent of such individual and in which participation is limited to individuals

of one sex only, so long as such pageant is in compliance with other nondiscrimination provisions of Federal law.

…

**20 U.S.C. § 1682**

## § 1682. Federal administrative enforcement; report to Congressional committees

Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity, by way of grant, loan, or contract other than a contract of insurance or guaranty, is authorized and directed to effectuate the provisions of section 1681 of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken. No such rule, regulation, or order shall become effective unless and until approved by the President. Compliance with any requirement adopted pursuant to this section may be effected (1) by the termination of or refusal to grant or to continue assistance under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made, and shall be limited in its effect to the particular program, or part thereof, in which such noncompliance has been so found, or (2) by any other means authorized by law: *Provided, however,* That no such action shall be taken until the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. In the case of any action terminating, or refusing to grant or continue, assistance because of failure to comply with a requirement imposed pursuant to this section, the head of the Federal department or agency shall file with the committees of the House and Senate having legislative jurisdiction over the program or activity involved a full written report of the circumstances and the grounds for such action. No such action shall become effective until thirty days have elapsed after the filing of such report.