## No. 24-5588

# In the
# United States Court of Appeals
## for the Sixth Circuit

———— • ————

STATE OF TENNESSEE; COMMONWEALTH OF KENTUCKY;
STATE OF OHIO; STATE OF INDIANA; COMMONWEALTH OF VIRGINIA;
STATE OF WEST VIRGINIA,

*Plaintiffs-Appellees,*

CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL;
A.C. by her next friend and mother Next Friend, Abigail,

*Cross Intervenors/Plaintiffs-Appellees,*

v.

MIGUEL CARDONA, in his official capacity as Secretary of Education;
U.S. DEPARTMENT OF EDUCATION;

*Defendants-Appellants.*

—————————————————

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington, No. 2:24-cv-00072.
The Honorable Danny C. Reeves, Chief District Judge Presiding.

### *AMICUS CURIAE* BRIEF OF BRENT ELLIS, PRESIDENT OF SPRING ARBOR UNIVERSITY IN SUPPORT OF APPELLEES AND AFFIRMANCE

WILLIAM WAGNER
*Counsel of Record*
GREAT LAKES JUSTICE CENTER
5600 West Mount Hope Highway
Lansing, Michigan 48917
(517) 643-1765
Prof.WWJD@gmail.com

*Attorneys for Amicus Curiae*





UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-5588         Case Name: State of TN, et al. v. Cardona, et al.

Name of counsel: William Wagner

Pursuant to 6th Cir. R. 26.1, Brent Ellis, President of Spring Arbor University
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ September 3, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/William Wagner
Great Lakes Justice Center
5600 W. Mt. Hope Hwy., Lansing, MI

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page**

DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST ...........................................................................i

TABLE OF AUTHORITIES...............................................................iii

STATEMENT OF IDENTITY AND INTEREST OF *AMICUS CURIAE*...........................................................................................1

SUMMARY OF THE ARGUMENT ...........................................................2

ARGUMENT ...........................................................................................4

I.  THIS COURT SHOULD UPHOLD THE INJUNCTION ENTERED BY THE DISTRICT COURT AND RESTORE PREDICTABILITY IN THE LAW DIMINISHED BY CURRENT JURISPRUDENTIAL CONFLICT .............................4

CONCLUSION ......................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
 57 F.4th 791 (11th Cir. 2022) ...........................................................8-9

*United States v. Virginia*,
 518 U.S. 515 (1996) ..............................................................................9

**Statutes and Other Authority**

20 U.S.C. §1681(a) .................................................................................5

Fed. R. App. P. 29(a)(2) .........................................................................1

Fed. R. App. P. 29(a)(4) .........................................................................1

Fed. R. App. P. 29(a)(4)(E) ....................................................................1

D. Coleman, *Sex in Sport*, 80 L. AND CONTEMPORARY PROBLEMS
 63 (2017).................................................................................................8

INDEPENDENT REVIEW OF GENDER IDENTITY SERVICES FOR
 CHILDREN AND YOUNG PEOPLE, FINAL REPORT TO NHS
 ENGLAND, https://cass.independent-
 review.uk/home/publications/final-report/ (last visited July 23,
 2024)............................................................................................... 9, 10

Transgender Participation Policy (April 8, 2024),
 https://www.naia.org/transgender/files/TG_Policy_for_webpag
 e_v2.pdf (last visited July 22, 2024)........................................... 4, 8, 10

Women's Sports Policy Working Group, MALE VICTORIES IN
 FEMALE SPORTS, https://womenssportspolicy.org/253-male-
 victories-in-female-sports/ (last visited July 23, 2024)....................... 10

## STATEMENT OF IDENTITY
## AND INTEREST OF *AMICUS CURIAE*

Pursuant to FRAP Rule 29(a)(4), *Amicus Curiae*, *Spring Arbor University President Brent Ellis,* submits this brief.[1]

Dr. Brent Ellis serves as the 30th president of Spring Arbor University (SAU). At SAU, women compete in the following female sports programs: Basketball, Bowling, Cross Country, Golf, Soccer, Softball, Tennis, Track & Field, and Volleyball.  SAU Men compete in the following male sports programs: Baseball, Basketball, Bowling, Cross Country, Golf, Soccer, Softball, Tennis, and Track & Field.  Coed sports include Competitive Cheer and Esports.

SAU is a member of the National Association of Intercollegiate Athletics, the second largest governing body of collegiate sports. The Association includes 237 institutions in twenty-one conferences. President Ellis serves on the NAIA Council of Presidents.  At the request

---

[1] Pursuant to Rule 29(a)(2), all parties have consented to *Amicus Curiae* filing this brief. Pursuant to Rule 29(a)(4)(E), *Amicus Curiae* further states that no counsel for any party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief.  No person or entity, other than *Amicus Curiae*, its members or its counsel, made a monetary contribution intending to fund the preparation or submission of this brief.

of the Council, the NAIA formed a Task Force to review its existing policies governing sports participation. President Ellis actively participated in this two-year process. https://www.naia.org/transgender /index (last visited July 30, 2024).

*Amicus Curiae* holds a significant interest in the education of the next generation. *Amicus Curiae* has special knowledge helpful to this Court in this case, about male athletes competing against female athletes in female sports. We present this special knowledge in a Brandeis-style *Amicus Curiae* brief.

## SUMMARY OF THE ARGUMENT

This Court should uphold the injunction entered by the District Court. In doing so, this case provides an opportunity to restore predictability in the law. This Court should do so now because predictability in the law is necessary for good governance under the Rule of Law, especially during times of jurisprudential conflict and cultural discord.

Some athletes claim legal protection for new classifications flowing from fluid gender identity formulations, rather than objective biological science showing sex as immutable. When this contemporary cultural clash challenged the advancement of fairness for women in sports, the

National Association of Intercollegiate Athletics (NAIA) sought a just resolution. An NAIA Task Force conducted a two-year study under the direction of the Council of Presidents, including *Amicus* Spring Arbor University President Brent Ellis.

In this Brandeis-style *Amicus Curiae* brief we present the conclusions reached by the Task Force to assist this Court in understanding the jurisprudential differences underlying the parties' positions in our divided culture. Assiduously avoiding stereotyping and stereotypes, the study demonstrated the relevance of biological sex to "supporting the fair and safe competition opportunities for all student athletes." The Task Force study found that each NAIA male and female sport "includes some combination of strength, speed, and stamina, providing competitive advantages for male student athletes." As to whether NAIA policy should, in female sports, permit men to compete against women, each of these elements rationally relate to, and are necessary for, creating a fair playing field, ensuring safety for competing athletes, and precluding male athletes from unfairly taking scholarship positions of female athletes. The NAIA, after unanimous approval by the Council of Presidents, "created separate categories for male and female

participants." Transgender Participation Policy (April 8, 2024), https://www.naia.org/transgender/files/TG_Policy_for_webpage_v2.pdf (last visited July 22, 2024)

## ARGUMENT

### I.    THIS COURT SHOULD UPHOLD THE INJUNCTION ENTERED BY THE DISTRICT COURT AND RESTORE PREDICTABILITY IN THE LAW DIMINISHED BY CURRENT JURISPRUDENTIAL CONFLICT

Deeply divided, the States of this nation now divide precisely in half as to whether male athletes ought to compete in female sports against female athletes. https://highergroundtimes.com/higher-ground/2024/jul/22/chris-sununu-signs-new-hampshire-bans-on-biologica/ (last visited July 30, 2024). Reflecting this deep division, federal courts continue to split over how to decide these kinds of issues. This Court should uphold the injunction entered by the District Court. In doing so, this case provides an opportunity to restore predictability in the law. This Court should do so now because predictability in the law is necessary for good governance under the Rule of Law, especially during times of jurisprudential conflict and cultural discord.

Consistent judicial decisions, grounded in honest interpretation, give government officials and others notice of what is prohibited.  When it comes to judicial review of government action and statutory provisions, consistent decisions provide predictability for officials seeking to act in accordance with statutory standards. Inconsistent judicial precedents lead to unpredictability in the law, providing no beneficial guidance for government officials or others trying to act within the law.  *Amicus Curiae* is among those seeking to act within the law in the midst of a nation divided.

Congress statutorily removed obstacles precluding women, based on their sex, from participating in educational opportunities -- greatly advancing fairness in opportunities for women in sports. 20 U.S.C. §1681, *et seq.*  Here, Title IX provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....  20 U.S.C. §1681(a).

What does sex mean for the purpose of Title IX?  Challenges to the advancement of fairness for women in sports occurs when male athletes subjectively self-identify as female.  Because they claim legal protection

flowing from fluid gender identity formulations, their claims collide with objective biological science showing sex as immutable. Does a policy enabling male athletes to identify as female create an unfair playing field? Does it endanger competing female athletes? Does it unfairly displace scholarships intended for female athletes? Responding to these concerns, university athletic programs, conferences, and associations sought solutions. One of these athletic associations was the National Association of Intercollegiate Athletics (NAIA).

The second largest governing body of collegiate sports, the NAIA, includes 237 institutions in twenty-one conferences. *Amicus* SAU President Ellis served on the NAIA Council of Presidents when, at the request of the Council, the Association formed a Task Force in April 2022. https://www.naia.org/transgender/index (last accessed July 22, 2024).

Like the NCAA's policy prior to January 2022, NAIA's policy allowed male athletes to compete on women's teams if they asserted a gender identity as female and undertook a year of androgen suppression. *Id.*

The NCAA changed its policy in January 2022 so that the applicable Olympic national governing body (NGB) policy for each sport

corresponded to the NCAA's policy for each sport *Id.*[2]  *Amicus* Ellis, and the rest of the Council of Presidents, subsequently assigned the NAIA's Task Force to review NAIA's existing policies governing sports participation.  *Id.*  The Council directed the Task Force to ascertain if a need existed to modify current policy.  *Id.*  If so, the Council further charged the Task Force with proposing recommended changes for the Council of Presidents to consider. *Id.*

Twenty-four months of diligent study ensued, ultimately producing a new policy governing participation and competition on female sports teams. *Id.*  The Council of Presidents unanimously approved the policy on April 8, 2024, with an effective date of August 1, 2024. *Id.*

The Task Force and Council of Presidents assiduously avoided stereotyping and stereotypes.  Instead, its two-year study demonstrated the relevance of biological sex to "supporting the fair and safe competition opportunities for all student athletes."

---

[2] Under International Olympic Committee policy, the NGB for each sport determines whether men may compete against women in female events. For sports where no applicable NGB policy exists, the NCAA expects to use either United States Olympic & Paralympic Committee policy or International Federation Policy. *Id.*

Transgender      Participation      Policy      (April      8,      2024),

https://www.naia.org/transgender/files/TG_Policy_for_webpage_v2.pdf

(last visited July 22, 2024) (hereafter NAIA Policy)

The underlying foundation for the new policy included: creating a fair

playing field; ensuring safety for competing athletes; and precluding

male athletes from unfairly taking scholarship positions of female

athletes. *Id.*

The Task Force study found that each NAIA male and female sport

"includes some combination of strength, speed, and stamina, providing

competitive advantages for male student athletes." *Id.;* see also, D.

Coleman, *Sex in Sport*, 80 L. AND CONTEMPORARY PROBLEMS 63, 74

(2017)).  As to whether NAIA policy should, in female sports, permit men

to compete against women, each of these facts rationally relate to, and

are necessary for, creating a fair playing field, ensuring safety for

competing athletes, and precluding male athletes from unfairly taking

scholarship positions of female athletes.  Understanding the significant

impact of biology in sports competition, the NAIA, therefore, reasonably

and necessarily "created separate categories for male and female

participants." *NAIA Policy*; see also, *Adams ex rel. Kasper v. Sch. Bd. of*

*St. Johns Cnty.*, 57 F.4th 791, 801 (11th Cir. 2022) (applying objective biological understanding of sex as immutable in recognizing inherent difference between boys and girls); *United States v. Virgin*ia, 518 U.S. 515, 533 (1996) (recognizing that "[p]hysical differences between men and women ... are enduring ... [i]nherent differences between men and women, we have come to appreciate, remain cause for celebration, but not for denigration of the members of either sex or for artificial constraints on an individual's opportunity.")

This Court ought to approach with caution cultural calls to cancel objective biological science in the context of statutes like Title IX. Medical experts in Europe now recognize that the "use of masculinizing / feminizing hormones ... present many unknowns...." INDEPENDENT REVIEW OF GENDER IDENTITY SERVICES FOR CHILDREN AND YOUNG PEOPLE, FINAL REPORT TO NHS ENGLAND, https://cass.independent-review.uk/home/publications/final-report/ (last visited July 23, 2024). Indeed, the "strengths and weaknesses of the evidence ... are often misrepresented and overstated, both in scientific publications and social debate." *Id.* While "a considerable amount of research has been published in this field, systematic evidence reviews demonstrated the poor quality

of the published studies, meaning there is not a reliable evidence base upon which to make clinical decisions, or ... to make informed choices." *Id.*

Moreover, elevating self-identifying subjective gender fluidity over the objective biological truth that sex is immutable results in the unfair and unjust outcomes for female athletes articulated by the Appellees. See, Women's Sports Policy Working Group, MALE VICTORIES IN FEMALE SPORTS, https://womenssportspolicy.org/253-male-victories-in-female-sports/ (last visited July 23, 2024). With this unfairness as a backdrop, it is important to understand that under the NAIA policy *no athlete is prevented from NAIA competition*. To be sure, the policy provides clear lanes as to which category the athlete competes. Thus "[o]nly NAIA student-athletes whose biological sex is female may participate in NAIA-sponsored female sports." *NAIA Policy*. "All eligible NAIA student-athletes may participate in NAIA-sponsored male sports" including "[a] student who has begun masculinizing hormone therapy..." *Id.* In addition to providing every athlete with a fair opportunity to compete, the NAIA policy also recognizes the natural inherent dignity of human beings by ensuring "appropriate privacy protections" for athletes. *Id.*

## CONCLUSION

Male athletes continue to self-identify as female.  Subjectively fluid gender identity formulations continue to collide with objective biological science showing sex as immutable.  And federal courts continue to split over whether to choose truth or fiction in resolving these cases and controversies arising under the Constitution and laws of the United States.  This case provides the opportunity for the Court to help resolve existing jurisprudential conflict and restore some sanity to this nation's judicial institutions, just as your *Amicus* did in the Academy.

For the foregoing reasons, *Amicus Curiae* urges this Court to uphold the injunction entered by the District Court.

Respectfully submitted,

*/s/ William Wagner*
William Wagner
*Counsel of Record*
5600 West Mount Hope Hwy
Lansing, MI 48917
(517) 643-1765
Prof.WWJD@gmail.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), contains 1,907 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

Dated:    September 3, 2024

*/s/ William Wagner*
William Wagner
Attorney for *Amicus Curiae*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 3, 2024, an electronic copy of the aforementioned brief was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that all participants are registered CM/ECF users and will be served via the CM/ECF system.

*/s/ William Wagner*
William Wagner