No. 24-5588

# In the United States Court of Appeals
## FOR THE SIXTH CIRCUIT

————

STATE OF TENNESSEE, et al.,
PLAINTIFFS-APPELLEES,

and

CHRISTIAN EDUCATORS ASSOCIATION INTERNATIONAL, et al.,
INTERVENORS-PLAINTIFFS-APPELLEES,

*v.*

MIGUEL CARDONA, in his official capacity as
Secretary of Education, et al.,
DEFENDANTS-APPELLANTS.

————

On Appeal from the United States District Court for the
Eastern District of Kentucky, Case No. 2:24-cv-00072
The Honorable Danny C. Reeves, Judge

————

## AMICUS BRIEF OF JANE DOE
## SUPPORTING PLAINTIFFS-APPELLEES

————

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
cbrewer@will-law.org
(414) 727-9455

CORY J. BREWER
*Counsel of Record*

RICHARD M. ESENBERG
LUKE N. BERG
LAUREN L. GREUEL

# TABLE OF CONTENTS

INTEREST OF AMICUS .......................................................................1

INTRODUCTION ...............................................................................5

ARGUMENT .....................................................................................6

   I.  The New Title IX Rule Conflicts with Original Congressional Intent and Misapplies Supreme Court Precedent. .........................6

   II.  Bathrooms and Locker Rooms Have Always Been Separated By Biological Sex to Protect Safety and Privacy, Especially for Young Girls. .................................................................13

   III. The Redefinition of Hostile Environment Standards Under the New Rule is Unlawful and Dangerous. ...............................16

CONCLUSION ................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*
  57 F.4th 791 (11th Cir. 2022)..........................................8, 13, 15, 16

*Bostock v. Clayton County, Georgia*
  590 U.S. 644 (2020)....................................................................11, 12

*Brannum v. Overton Cnty. Sch. Bd.*
  516 F.3d 489 (6th Cir. 2008) ........................................................15

*Canedy v. Boardman*
  16 F.3d 183 (7th Cir. 1994) ...........................................................14

*Chaney v. Plainfield Healthcare Ctr.*
  612 F.3d 908 (7th Cir. 2010) .........................................................17

*Cornfield ex rel. Lewis v. Consol. High Sch. Dist. No. 230*
  991 F.2d 1316 (7th Cir. 1993) .......................................................15

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*
  526 U.S. 629 (1999)........................................................................19

*Doe v. Luzerne Cnty.*
  660 F.3d 169 (3d Cir. 2011) ..........................................................14

*Grimm v. Gloucester Cnty. Sch. Bd.*
  972 F.3d 586 (4th Cir. 2020) .........................................................15

*Grove City Coll. v. Bell*
  465 U.S. 555 (1984)......................................................................7, 8

*N. Haven Bd. of Educ. v. Bell*
  456 U.S. 512 (1982)........................................................................ 7

*Poe v. Leonard*
  282 F.3d 123 (2d Cir. 2002) ..........................................................14

*Safford Unified Sch. Dist. No. 1 v. Redding*
  557 U.S. 364 (2009)........................................................................15

*Tennessee et al. v. Cardona*
  ___ F. Supp. 3d ___, 2:24-cv-00072, 2024 WL 3019146 (June
  17, 2024)........................................................................................11

*United States v. Virginia*
    518 U.S. 515 (1996)..................................................................16

**Statutes and Ordinances**

20 U.S.C. § 1681(a) ...................................................................... 6

**Other Authorities**

Ruth Bader Ginsburg, The Fear of the Equal Rights Amendment,
    Washington Post (April 7, 1975)....................................16

W. Burlette Carter, Sexism in the "Bathroom Debates": How
    Bathrooms Really Became Separated by Sex, 37 Yale L. &
    Pol'y Rev. 227, 230 (2018) ............................................17

**Rules and Regulations**

20 U.S.C. § 1686..........................................................................10

34 C.F.R. § 106.33....................................................................... 9

40 Fed. Reg. 24,128 (June 4, 1975) ........................................ 7

62 Fed. Reg. 12,034 (March 13, 1997) ...................................17

89 Fed. Reg. 33,474, (Apr. 29, 2024) .............................passim

## INTEREST OF AMICUS[1]

*Amicus* Jane Doe is a high school girl who suffered unwelcome sexual conduct when a male student, claiming to be "trans," showered fully undressed next to her and three other freshman girls in the girls' locker room. Having gone through this traumatic experience—one that the new Title IX rule now *requires* schools to enable—*amicus* is concerned that her experience will be repeated throughout the nation if the forced inclusion of biological males into girls' intimate spaces is upheld. *Amicus* urges the Court to affirm the preliminary injunction by the district court.

Jane Doe is currently a junior in high school in the Sun Prairie Area School District in Wisconsin. On March 3, 2023, when she was a freshman, she and three other freshman girls participated in a swim unit as part of their first-hour physical education class. After the class, they entered the girls' locker room to shower and change for class. Upon entering, they noticed an 18-year-old senior male student in the area containing lockers and benches. This student was not in their first-hour

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting this brief.

physical education class. While Jane Doe and the girls were surprised to see this student in the girls' locker room, they had a general idea that he identified as transgender and had used the girls' bathrooms before. They were uncomfortable, but they proceeded to the shower area without interacting with the student.

Per their usual practice, the girls rinsed off with their swimsuits on. As they began to shower, however, the male student entered the shower area, announced, "I'm trans, by the way," and then completely undressed and showered fully naked across from Jane Doe and right next to one of the other girls. He was initially facing towards the wall but eventually turned and fully exposed himself to the four girls. They were shocked and caught off guard, closed their eyes, and tried to hurry up and leave the showers as quickly as possible.

The girls were shaken and, understandably, unsure of what to do next, but the incident was eventually reported to the district, which failed to properly address it. Jane Doe was *never* contacted throughout the process. She was never interviewed. She was never offered supportive measures. No one from the school district investigated the incident or contacted any of the girls' parents until *they* contacted the school. After

Jane Doe's mother emailed the principal and superintendent, the principal eventually apologized "for the incident that occurred" and stated that it "should not have happened," but the district failed to identify any clear steps it would take to prevent this from happening again. Indeed, their response almost guarantees that it *will* happen again.

On April 10, 2023—over a month after the incident—the principal emailed one parent a copy of a "Restroom and Locker Room Accessibility Guidance." This guidance document *allows* males to use the girls' locker room, without any regard for the privacy or comfort of female students. The only caveat in the guidance is that, if a male "makes any request regarding the use of locker rooms," district administrators will evaluate the request on a "case-by-case basis." But it is not clear who evaluates such requests or what the criteria are. The one thing that is clear in the guidance is that, if girls want more privacy, it is *they* who must leave and use a separate bathroom or locker room.

On April 19, the Wisconsin Institute for Law & Liberty (WILL) sent a letter to the Sun Prairie Area School District calling on the district to address the incident and to put policies in place that will protect the

safety and privacy of all students.[2] WILL also submitted an open records request for the relevant locker room policy and other related documents. That request was never fulfilled because the district demanded approximately $11,000 in pre-payment[3] before releasing any records.

Following the WILL letter and corresponding media coverage, community members demanded answers at local school board meetings. Many expressed frustration and confusion about how, when, and where boys and girls will be allowed to use single-sex spaces such as locker rooms. It has been a year and a half since the incident occurred, and a lack of clarity persists.

On June 14, 2023, WILL filed a complaint with the U.S. Department of Education's Office of Civil Rights against the Sun Prairie Area School District for sex discrimination.[4] WILL made the complaint as an interested third-party organization as counsel for Jane Doe who was discriminated against on the basis of sex. On November 29, 2023, the

---

[2] https://will-law.org/wp-content/uploads/2023/04/2023-04-19-Letter-to-SPASD-Board-re-EHS-Locker-Room-Incident-w.-attachme.pdf

[3] https://will-law.org/in-case-you-missed-it-sun-prairie-schools-charging-11000-for-records-surrounding-locker-room-incident/

[4] https://will-law.org/wp-content/uploads/2023/06/2023-06-14-SPASD-OCR-Complaint-FINAL-w.-Exhibits-A-E68.pdf

Office of Civil Rights opened an investigation on the grounds that the district failed to respond to a report of sexual harassment in March 2023.[5] That investigation is ongoing.

Jane Doe is concerned that the new Title IX rule would allow what happened to her to happen to any other girl across the country. Young girls should not have to face invasion of their privacy and fear unwelcome sexual conduct every time they use the locker room or bathroom. Jane Doe has an interest in this litigation because she does not want what she experienced—or worse—to become the norm in schools, pre-K through higher education. All parties have consented to the filing of this amicus brief.

## INTRODUCTION

The new Title IX rule marks a dramatic shift from the protections originally envisioned by Congress, and it fundamentally alters the landscape of student privacy and safety. Jane Doe, amicus in this case, is a high school junior whose experience serves as a poignant example of the rule's potential consequences. Her experience underscores the

---

[5] https://will-law.org/wp-content/uploads/2023/11/OCR-Opening-Investigation-SPASD66.pdf

pressing privacy and safety concerns that the new rule would affect. This incident serves as a stark reminder of why safeguarding students' rights remains crucial in our schools. Specifically, the new rule mandates access to sex-segregated facilities based on gender identity, undermining established protections for bodily privacy and creating risks for students, especially in sensitive areas like locker rooms and bathrooms. The district court correctly enjoined the rule, upholding longstanding privacy rights integral to schools across the country. This Court should affirm.

## ARGUMENT

### I.    The New Title IX Rule Conflicts with Original Congressional Intent and Misapplies Supreme Court Precedent.

The rule challenged in this case[6] introduces several new requirements that conflict with the law Congress passed in 1972. The Title IX statute provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Moreover,

---

[6] Nondiscrimination on the Basis of Sex in Educ. Programs or Activities Receiving Fed. Fin. Assistance, 89 Fed. Reg. 33,474, (Apr. 29, 2024).

the very first Title IX regulations, adopted by the Department of Health, Education, and Welfare ("HEW"), provided explicitly that schools can have "separate toilet, locker room, and shower facilities on the basis of sex," and they have ever since. 40 Fed. Reg. 24,128, 24,141 (June 4, 1975) (now codified at 34 C.F.R. § 106.33).

The "unique postenactment history" of Title IX, *see Grove City Coll. v. Bell*, 465 U.S. 555, 567 (1984), gives extra weight to the first regulations. *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 530–35 (1982). HEW was required to "submit[ ] the regulations to Congress for review," under a "'laying before' provision," which gave Congress 45 days to "disapprove [them] in a concurrent resolution." *Id.* at 531–32. Congress held multiple days of hearings on the new Title IX regulations and did not disapprove of the regulation allowing sex-separated bathrooms. While "not dispositive," this "unique" history "strongly implies that the regulations accurately reflect congressional intent." *Grove City Coll.*, 465 U.S. at 568.

The new rule, however, turns the law on its head, in multiple ways. First, it redefines sex discrimination to include distinctions based on "sex stereotypes, sex characteristics, pregnancy or related conditions, sexual

orientation, and gender identity." 89 Fed. Reg. at 33,886 (codified at 34 C.F.R. 106.10). The new rule does not define these categories, but the Department of Education (the "Department") has listed a range of genders and sexual orientations it considers to be protected under the rule, including "lesbian, gay, bisexual, transgender, queer, questioning, asexual, intersex, nonbinary, or [those who] describe their sex characteristics, sexual orientation, or gender identity in another similar way." *Id.* at 33,803. Once again, the Department did not define any of these terms. At the time Title IX was enacted, the term "sex" unequivocally meant "biological sex." In fact, "the overwhelming majority of dictionaries" at the time "defin[ed] 'sex' on the basis of biology and reproductive function." *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022) (listing the definitions from various dictionaries).

The new rule also reinterprets Title IX to allow some sex distinctions and forbid others based on whether they cause, in the Department's view, "more than de minimis harm"—a concept not found within Title IX itself. 89 Fed. Reg. at 33,887 (codified at 34 C.F.R. 106.31(a)(2)). The rule stipulates that unless specifically exempted, any

- 8 -

policy or "practice that prevents a person from participating in" a covered "activity consistent with [their] gender identity" is automatically considered to cause more than *de minimis* harm. *Id.* at 33,820.

The rule that allows sex-separated bathrooms, 34 C.F.R. § 106.33, is conspicuously absent from the list of exemptions to this presumption of "more than de minimis harm." *Id.* at 33,887 (codified at 34 C.F.R. 106.31(a)(2)). Thus, in conjunction, §§ 106.10 and 106.31(a)(2) mandate that students must have access to bathrooms and locker rooms "consistent with [their] gender identity." *Id.* at 33,818. If there were any doubt, the preamble makes clear that this is how the Department interprets the combined effect of these provisions. *Id.* at 33,818–21.

To summarize: by a wave of hands, the Department has magically transformed a rule that expressly *permits* sex-separated bathrooms and locker rooms into one that *forbids* schools from keeping their facilities separated by sex, as long as the individual who wants access to the opposite-sex bathrooms asserts a different "gender identity."

Notably, the new rule takes a different approach to living facilities to avoid an even more obvious conflict with the Title IX statute. The statute expressly provides that "living facilities" can be separated by sex,

due to the obvious privacy considerations: "[N]othing contained herein shall be construed to prohibit any educational institution receiving funds under this Act, from maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686. Unlike bathrooms and locker rooms, that section *is* specifically listed in § 106.31(a)(2) as an exemption from the automatic, "more than de minimis harm" presumption.

The new de minimis harm standard in the rule will create confusion for schools trying to implement the rule. As the district court observed, the rule "accommodates a reality in which student housing remains sex-segregated while students are free to choose the bathrooms and locker rooms they use based on gender identity." *Tennessee et al. v. Cardona*, ___ F. Supp. 3d ___, 2:24-cv-00072, 2024 WL 3019146, at *33 (June 17, 2024). Not only does this conflict with what Congress included in the Title IX law, it also eliminates the protections and privacy interests of students like Jane Doe. Congress clearly did not believe that the equality between the sexes mandated by Title IX overrode separation of the sexes for purposes of privacy. It is an implausible argument that Congress concluded privacy is required for living quarters but not for locker rooms and bathrooms. It is far more likely that Congress never imagined that

these privacy interests would be ignored in areas where persons fully or partially disrobe.

The new rule is also contrary to law because it improperly applied the reasoning from *Bostock v. Clayton County* to Title IX. Indeed, the U.S. Supreme Court has made it very clear that "sex" as defined under civil rights laws does *not* include "gender identity." *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020). In *Bostock*, the Court considered whether Title VII of the Civil Rights Act—which prohibits employers from discriminating against their employees on the basis of sex—banned employers from firing homosexual and transgender employees. 590 U.S. 644. The Court held that an employer could not fire a biological female employee for certain conduct while permitting a male employee to engage in the same conduct. *Id.* at 659–64. It also found that an employer could not fire a male employee because he did not sufficiently adhere to masculine stereotypes. *Id.* at 659–60.

But in doing so, the *Bostock* Court did not hold that "sex" includes "gender identity." If anything, it did the opposite, explaining that sex "refers to the biological distinctions *between male and female*." *Id.* at 655 (emphasis added). The Court also specifically limited its holding to the

facts of the case and the text and legislative history of Title VII. *Id.* at 680–81. The employers raised the specter of "sex-segregated bathrooms, locker rooms, and dress codes [becoming] unsustainable after our decision today." *Id.* The Court responded to this argument by carefully disclaiming any effect on that issue: "[N]one of these other laws are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and we do not prejudge any such question today." *Id.*

As the panel in this Court previously noted, the Department overstepped its authority by misinterpreting *Bostock* to redefine sex discrimination under Title IX. Notably, Title VII and Title IX "use materially different" language, pursue "different goals," and "have distinct defenses." 07/17/2024 Order 5. The U.S. Supreme Court upheld the panel's decision, with all nine justices agreeing that "plaintiffs were entitled to preliminary injunctive relief as to three provisions of the rule, including [§106.10]," which redefined sex discrimination. *Id.* at *1; *id.* at *4 (Sotomayor, J, dissenting in part).

## II.    Bathrooms and Locker Rooms Have Always Been Separated By Biological Sex to Protect Safety and Privacy, Especially for Young Girls.

Separate bathrooms and locker rooms have been the norm and societal expectation for centuries, and the rationale used to be obvious to all—to allow bodily privacy from members of the opposite sex. Yet the new rule would require schools to ignore sex and allow facilities use based on gender identity. "[C]ourts have long found a privacy interest in shielding one's body from the opposite sex in a variety of legal contexts." *Adams*, 57 F.4th at 805 (listing cases); *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) ("The right to privacy is now firmly ensconced among the individual liberties protected by our Constitution.").

Courts have recognized a right to privacy both as to one's unclothed body and as to one's "partially clothed body." *See, e.g., Doe v. Luzerne Cnty.*, 660 F.3d 169, 176 (3d Cir. 2011) (listing cases); *Poe v. Leonard*, 282 F.3d 123, 138 (2d Cir. 2002) ("[T]here is a right to privacy in one's unclothed or partially unclothed body."). And this privacy right applies, especially, to protect one's body from view by members of the opposite sex. *See, e.g., Luzerne Cnty.*, 660 F.3d at 177 (finding a "reasonable expectation of privacy ... particularly while in the presence of members

of the opposite sex.") (emphasis added); *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008) (the "right to privacy [ ] includes the right to shield one's body from exposure to viewing by the opposite sex.").

This privacy interest is even more "heightened" when children and adolescents are involved, because they "are still developing, both emotionally and physically," *Adams*, 57 F.4th at 804 (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 636 (4th Cir. 2020) (Niemeyer, J., dissenting)), and because children and adolescents tend to be "extremely self-conscious about their bodies." *Cornfield ex rel. Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1323 (7th Cir. 1993); *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 375 (2009) ("adolescent vulnerability intensifies the patent intrusiveness of the exposure").

Indeed, this right to privacy is the very reason that "sex-separated bathrooms ha[ve] been widely recognized throughout American history and jurisprudence," *Adams*, 57 F.4th at 805, and why Title IX, itself, has permitted sex-segregated bathrooms, 34 C.F.R. § 106.33 (2020)—at least until the new rule. It is why the Supreme Court observed in *United States*

*v. Virginia* that "[a]dmitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements." 518 U.S. 515, 551 (1996). And it is why even Justice Ginsburg wrote that "[s]eparate places to disrobe, sleep, perform personal bodily functions are permitted, in some situations required, by regard for individual privacy." Ruth Bader Ginsburg, The Fear of the Equal Rights Amendment, Washington Post (April 7, 1975).[7] As one scholar put it, "sex-separation in bathrooms dates back to ancient times, and, in the United States, preceded the nation's founding," and the "key purpose ... was to protect women and girls from sexual harassment and sexual assault in the workplace and other venues." W. Burlette Carter, Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex, 37 Yale L. & Pol'y Rev. 227, 230 (2018). In short, "the law tolerates same-sex restrooms or same-sex dressing rooms ... to accommodate privacy needs." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010).

---

[7] Available at https://www.washingtonpost.com/news/volokh-conspiracy/wp-content/uploads/sites/14/2016/05/ginsburg.jpg?itid=lk_inline_manual_3

Amicus Jane Doe is deeply concerned that the new Title IX rule would subject girls to invasion of their privacy and fear of unwelcome sexual conduct every time they use the locker room or bathroom. As described above, Jane Doe experienced this when an adult male student, claiming to be "trans," showered fully undressed next to her and three other freshman girls in the girls' locker room in 2023. Jane Doe does not want anything like what she experienced to become commonplace due to the new rule. Allowing the new rule to go into effect would harm all students by eliminating the safety and privacy that they rightly expect when they use the bathrooms and locker rooms at school.

## III.    The Redefinition of Hostile Environment Standards Under the New Rule is Unlawful and Dangerous.

The new rule also redefines the standards for hostile-environment claims. 89 Fed. Reg. at 33,498. Harassment now only needs to be "severe *or* pervasive," rather than meeting both criteria. *Id.* at 33,884 (emphasis added). Complainants are not required to demonstrate "any particular harm" or show that they were denied access to an educational program. *Id.* at 33,511. Harassment can include anything that a student perceives as "unwelcome" or that "limits" their ability to benefit from an educational program. *Id.* at 33,884 (codified at 34 C.F.R. § 106.2).

Back in 1997, the Department of Education, under the Clinton Administration, issued a guidance document stating that sex discrimination included sexual harassment. *See* 62 Fed. Reg. 12,034 (March 13, 1997).[8] The Department reasoned that students were facing harassment on campus, which effectively prevented them from receiving an education. *Id.* Two years later, the U.S. Supreme Court adopted the Clinton Administration's determination that Title IX covered sexual harassment, and it clarified that harassment must be "so severe, pervasive, and objectively offensive" that it effectively "denies its victims the equal access to education that Title IX is designed to protect." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999). The new rule undermines this.

*Davis* set a high bar, rightfully so, aligning with the primary goal of Title IX: to guarantee equal access to education regardless of sex. It also protects free speech, including so-called "hate speech" and offensive speech, by ensuring that harassment involves more than just being

---

[8] Office for Civil Rights; Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 FR 12,034, available at https://www.govinfo.gov/content/pkg/FR-1997-03-13/pdf/97-6373.pdf (last accessed August 30, 2024).

offended. Crucially, the standard requires schools to objectively evaluate harassment claims to determine if discrimination based on sex has occurred. This approach helps maintain a balance between safeguarding students from genuine harassment and protecting individuals from unjustly being labeled as sexual harassers under Title IX.

Even considering the fact that the school district where Jane Doe attends failed to appropriately respond to the alleged sexual harassment in the girls' locker room showers, the new rule would cause *even more* harm. It would turn the tables by classifying the male student as the victim simply because he told the girls he was "trans." By not immediately accepting and affirming his transgender identity, the girls—in their own locker room showers—could be considered the predators. The male student would not have to demonstrate any particular harm under the new rule. All he would have to show is that he felt "unwelcome" or like his ability to benefit from school was limited. *Id.* at 33,511, 33,884. This is completely backwards.

Not only does the new rule shift the standard away from impartiality and neutrality, it requires schools to examine harassment from both an objective *and* subjective perspective. It also drastically

changes what schools must respond to. Rather than responding to harassment that *denies* access to educational opportunities, it requires such a response when harassment merely "*limits* the ability to participate" in an educational program.

Ultimately, the Department has significantly lowered the standard for harassment by requiring schools to assess complaints from the perspective of the complainant under the "severe *or* pervasive" standard and to consider whether the perceived harassment merely limits the complainant's participation in an education program. The shift from an objective standard to one that incorporates subjective perceptions of harassment risks blurring the lines between genuine instances of discrimination and ordinary conflicts. This change, coupled with the Department's vague and overly broad definition of "sex," will open the floodgates to a surge of complaints, making it more challenging for schools to fairly and effectively address legitimate cases of harassment without wrongfully penalizing others.

## CONCLUSION

This Court should affirm the preliminary injunction by the district court.

Dated: September 3, 2024

Respectfully Submitted,

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

/s/ Cory J. Brewer
CORY J. BREWER

RICHARD M. ESENBERG
LUKE N. BERG
LAUREN L. GREUEL

330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
cbrewer@will-law.org
(414) 727-7367

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(G), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 3,737 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 3, 2024

/s/ Cory J. Brewer
CORY J. BREWER

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2024, I filed the foregoing Amicus Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: September 3, 2024

/s/ Cory J. Brewer

CORY J. BREWER